Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 It is insisted that Great Britain does not accord to our citizens the right to prosecute claims against her government in her courts, because the mode of proceeding in that country for the recovery of claims against the government depends on the will of the Crown, while with us the right is absolute.
 

 It is a familiar principle that all governments possess an immunity from suit, and it is only in a spirit of liberality, and to promote the ends of justice, that they ever allow themselves to be brought into court. If the privilege be granted at all, necessarily the regulations concerning it and
 
 *183
 
 the mode of proceeding will differ, as much as the .governments themselves differ.
 

 In England, it is easy to see that the method of redressing injuries to which the Crown is a party, would be different from the remedy adopted in this country in case the United States be the aggressor, because of the principle underlying the English constitution, that the King can do no wrong. On this account, although it would not do to issue mandatory process against the sovereign, yet the law being unwilling that private rights should be invaded in the conduct of public affairs and not redressed, has furnished the subject who is thus injured with a mode of obtaining redress, which is consistent with the idea of kingly prerogative. The law allows him by petition to inform the King of the nature of his grievance, and “ as the law presumes that to know of any injury and to redress it are inseparable in the royal breast, it then issues, as of course, in the King’s own name, his orders to his judges to do justice to the party aggrieved.”
 
 *
 

 This valuable privilege, secured to the subject in the time of Edward the First, is now crystallized in the common law of England. As the prayer of the petition is grantable
 
 ex debito justilice,
 
 it is called a petition of right, and is a judicial proceeding, to be tried like suits between subject and subject.
 

 It doe’s not exist by virtue of any statute, nor does the recent legislation in England concerning it do more than to regulate the manner of its exercise and to confer on the petitioner the privilege, not before granted, of instituting his proceeding in any one of the superior courts of common law or equity in Westminster.
 

 In this condition of the law regarding the petition of right, which is conceded to aliens as well as subjects, how can it be contended that the British government does not accord to citizens of the United States the right to prosecute claims against it in its courts ? It is of no consequence that,
 
 *184
 
 theoretically speaking, the permission of the Crown is necessary to the filing of the petition, because it is the duty of the King to grant it, and the right of the subject to demand it. And we find that it is never refused, except in very extraordinary cases, and this proves nothing against the existence of the right. It is easy to see that cases might arise, involving political considerations, in which it would be eminently proper for the sovereign to withhold his permission, but Congress did not legislate with reference to such a state of things. It would be a severe rule of interpretation that would exclude'all British subjects from the Court of Claims, because in a few sporadic cases, from motives of state policy, the petition of right was denied. And we cannot impute to the legislature an intention that'would produce such a result, in the absence of an express declaration to that effect. Evidently Congress meant to ¿onfer on the British subject the right to sue in the Court of Claims under the act relating to captured and abandoned property, if, in the ordinary course of the administration of justice in England, the law secures to the American citizen the right to prosecute his claim against the government in its courts. That the petition of right accomplishes this object, cannot admit of question. If the mode of proceeding to enforce it be formal and ceremonious, it is nevertheless a practical and efficient remedy for the invasion by the sovereign power of individual rights. Indeed, it is not less practical and efficient than a suit in the Court of Claims. And in one important particular the two proceedings are alike, for both end with the recovery of the judgments. After they are obtained, it depends in England on the Parliament, and iu this country on Congress, whether or not they shall be paid.
 

 We all agree that O’Keefe had the right to bring his action in the Court of Claims, and the judgment of that court is therefore .
 

 Affirmed.
 

 *
 

 3 Blackstone’s Commentaries, 255.