Drake, Ch. J.,
delivered the opinion of the court:
The cases in which it has been held that the period of the rebellion is to be excluded from the computation of the time fixed by statutes of limitation for the bringing of suits, though arising between individuals, and principally under State laws, were settled upon grounds which seem to apply equally to the case of a claim against the United States in favor of an inhabitant of an insurrectionary State during that period, whether he was in act and fact a rebel, or was loyal to the Government, but constrained by circumstances to abide in the territory occupied by the rebel authorities and people. Regarded either way, he was excluded from suing in this court during that period. The following language of the Supreme Court in the leading case of Hanger v. Abbott (6 Wall., p. 532) would seem to leave no room for further question on this .point:
“Total inability on the part of an enemy creditor to sustain any contract in the tribunals of the other belligerent exists during war, but the restoration of j>eace removes the disability, and opens the doors of the courts. Absolute suspension of the right, and prohibition to exercise it, exists during war by the law of nations, and, if so, then it is clear that peace cannot bring with it the remedy if the war is of much duration, unless *231 it also be held that the operation of the statute of limitation is also suspended during the period the creditor is prohibited, by the existence of the war and the law of nations, from enforcing ' his claim. Neither laches nor fraud can be imputed in such a case, and none of the reasons on which the statute is founded can possibly apply, as the disability to sue becomes absolute by the declaration of war, and is a conclusion of law. Ability to sue was the status of the creditor when the contract was made, but the effect of war is to suspend the right, not only without any fault on his part, but under circumstances which made it his duty to abstain from any such attempt.”
We give the claimant’s intestate the full benefit of this exposition of the law, though in her petition she avers that he aided, encouraged, and abetted the rebellion.
If, then, the limitation prescribed by the Act March 3,1803, was suspended during the period of the rebellion, the next point to be determined is the date at which it became operative as against this claim. This was settled by the Supreme Court in the case of The Protector, (12 Wall., p. 700,) where it was held that the date of the Proclamation April 2, 1866, was the close of the war in the States therein mentioned, of which Florida was one. Hence we assign to that date the beginning of the operation of the statute.
It is, however, contended by the claimant’s counsel that this limitation is not operative, because of the peculiar language of the statute, which is in these words : “ That every claim against the United States, cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement of the claim be filed in the court, or transmitted to it, under the provisions of this act, within six years after the claim first accrues.”
It is urged that Sierra’s claim was not cognizable by this court while his status was that of an unpardoned rebel, because he could not, in a petition, make the averment of loyalty required by the statute. His immunity from the operation of the limitation is therefore based upon his own voluntary disqualification of himself to make that averment; which disqualification continued, it is said, until the general amnesty of December 15,1868, cleansed him from guilt and relieved him from the consequences of his treason.
This does not seem to be the true construction of the pro *232 vision. The statute does not act upon the right of a party to sue here, but upon the claim, declaring it forever barred, unless the petition thereon be filed or transmitted within the time limited. Hence, in referring to claims cognizable by this court, the intention, as we consider, was to apply the provision to claims of the descriptions which were by law subjected to the jurisdiction of the court, as distinguished from claims not so subjected. In other words, it is as if the clause read, “That every claim against the United States, of which the Court of Claims is authorized to take jurisdiction, shall be forever barred,” &c.
This view draws a clear line of distinction between the subject-matter of a claim and the personal right to prosecute the claim here. In subject-matter a claim may be within the jurisdiction of the court, while the claimant is disabled to prosecute it. It is with reference to the subject-matter and ndt to the personal right of the party to sue that the words “ cognizable by the Court of Claims” are used in this statute.
But were it otherwise, we hold again, as we did in Haycraft's Case, (8 C. Cls. R.,) that a rebel cannot avoid the effect of the limitation by setting up his own voluntary self-disqualification, through his acts of rebellion, to sue in this court. We cannot admit the soundness of a doctrine which would suspend the operation of the limitation in favor of a rebel during the period of the rebellion, and during the same period enforce it, as might well happen, against a Union soldier, who was too busy fighting for his Government to allow of his seeking recourse against it here. Especially should such a doctrine not be declared, when, immediately after the surrender of the rebel armies, amnesty was freely offered by the Proclamation May 29, 1865, to the great mass of the people of the rebel States, upon the single condition of their taking and keeping inviolate a prescribed oath of allegiance to the Constitution of the United States and the Union of the States thereunder. From the date of that proclamation to the day of his death, nearly two years afterward, the door of amnesty stood wide open to Joseph Sierra, and he would not avail himself of the opportunity to remove the only barrier to his recourse here. Had he sought the benefit of that proffered amnesty, he might at any. time thereafter have filed his petition here, without averring his adhesion to the United States during the war of the rebellion; for the Supreme Court, *233 reversing tbe judgment of this court, held, in a case where that averment was not made in the petition, that amnesty relieved claimants from the necessity of proving the fact, (Pargoud v. United States, 13 Wall., p. 156,) and, of course, such averment needed not to be made. Whether, therefore, Sierra willfully refused or merely neglected to avail himself of the amnesty tendered, or of a special pardon, the continuance of his disqualification to sue here was the result of his own omission, and that disqualification did not prevent the operation of the limitation.
The views we have expressed dispose of the remaining position of the claimant’s counsel, that not until the Proclamation December 25, 1868, was the way cleared for a suit here on this claim. We answer that by holding, as we did in Meldrim & Doyle's Case, (7 C. Cls. R., p. 595,) that that proclamation was inoperative as to one who had died before its issue.
But it is insisted that the claimant, as his administratrix, had six years from the time she became the subject of that amnesty within which to bring a suit upon this claim, and having brought it within that time, the claim isnot barred. To this the answeris, that the statute of limitation having begun to run in the lifetime of her intestate, its operation was not arrested by his death. Whether he lived or died, the suit should have been brought on or before the 2d day of April, 1872, and not having been brought till after that date, the claim is forever barred.
The claimant’s petition must be dismissed.
Nott, J., did not sit in this case, and took no part in the decision.