Mr. Justice CLIFFORD
 

 delivered the opinion of the court.
 

 Two errors are assigned, as follows:
 

 1st. That the court erred in sustaining the demurrer of the plaintiffs to the rejoinder filed by the defendant to the plaintiffs’ replication to the first special plea of the defendant.
 

 2d. That the court erred in sustaining the demurrer of the plaintiffs to the third plea of the defendant.
 

 I. Unsealed written contracts are barred by the statute of limitations of that State in five years from maturity, and it appears that the note described in the declaration matured on the first of November next after its date, but the record shows that the indorser deceased on the fifteenth of November, 1869, leaviug the note unpaid and outstanding. Under the laws of the State the general statute of limitations runs from the maturity of the contract to the granting of administration upon the estate of the decedent, when the general statute ceases to run and the statute of limitations applicable to the estates, of deceased persons begins to run.
 
 ‡
 

 
 *586
 
 Hence the defendant pleaded that the cause of action did not accrue to the plaintiffs at any time within five years next before the grant of letters of administration upon the estate of the deceased indorser.
 

 War, when duly declared or recognized as such by the war-making power, imports a prohibition to the «subjects or citizens of all commercial intercourse aud all correspondence with citizens or persons domiciled in the enemy country. Total inability, therefore, on the part of an enemy creditor to sustain any contract in the tribunals of the other belligerent, exists by the law of nations during the continuance of the war, but the restoration of peace removes the disability and opens the doors of the courts.
 

 Unquestioned right to sue is the
 
 status
 
 of the creditor if the contract was made during peace, but the effect of war is to suspend the right, not only without any fault on the part of the creditor, but under circumstances which make it his duty to abstain from any such attempt. His remedy is suspended by the acts of the two governments and by the law of nations, not applicable to the contract at its date, but which comes into operation in consequence of an event over which he has no control.
 
 *
 

 Peace, it is said, restores the right and the remedy, but as that cannot be if the statute of limitations continues to run during the period the creditor is rendered incapable of suing, it necessarily follows that the operation of the statute is also suspended during the same period.
 

 Attempt is made to distinguish the case before the court from the case in which that rule of decision was first promulgated by this court, but it is clear that the attempt must be unsuccessful, as the same doctrines have since been applied in a case where a mortgagee, who was a citizen and resident of one of the Confederate States, brought a suit after the close of the war upon a bond and mortgage executed prior to the war by citizens of one of the loyal States, and the court held that the period from the proelama
 
 *587
 
 tion of the blockade to the proclamation that the war was closed, must be deducted in the computation of the time which the statute of limitations of the loyal State had run against the right of action.
 
 *
 

 Extended discussion of that topic is quite unnecessary, as the oft-repeated decisions of this court have established the rule that the statute of limitations was suspended in the rebellious States during the existence of the late rebellion, and the express decision of this court is that the war was flagrant in that State for the whole period specified in the replication filed by the plaintiff's.
 
 †
 

 Viewed in the light of that decision it is clear that the rejoinder filed by the defendant is insufficient and that the ruling of the Circuit Court adjudging it bad was correct.
 
 ‡
 

 II. Due demand of the maker, protest, and notice to the indorser of non-payment are admitted, and it is alleged that the indorser subsequently, by a certain notice in writing, required the plaintiffs, as holders of the note, to sue the maker and the indorser at a time when the maker was solvent and able to pay the same, and that the plaintiffs omitted for more than thirty days to comply with the terms of the notice, during which time the maker became insolvent.
 

 Based on these facts the second defence set up is that the indorser was discharged by the neglect of the holders of the note to comply with the terms of that notice, which must depend in a great measure upon the nature of the obligation that the iudorser assumed by his contract of indorsement. If the holder of a negotiable promissory note does anj'thing, the effect of which is to suspend, impair, or destroy the right of the prior parties to indemnity from those otherwise liable over to them, he cannot resort to the parties affected by his conduct to make good the default of the maker of the instrument.
 
 §
 

 
 *588
 
 Simple indulgence, however, or mere delay to enforce payment, without a binding contract to give time, will not, under the general rules of commercial law, have that effect, even in the case of a party occupying strictly the contract relation of a surety.
 
 *
 

 Indorsers, it is sometimes said, are sureties, but their contract, which is a new one as compared with the maker of the note,- differs in some important respects from that of the surety, who is a joint promisor with the principal, as the holder of such an instrument is under no obligation to use diligence to enforce payment against the maker in order to hold the indorser.
 
 †
 

 Even in a case where the holder of a promissory note was, after the note fell due, called upon by the indorser to prosecute the maker, of whom the amount might then have been collected, but who afterwards became insolvent, and the holder neglected to do as requested, still it is held that such neglect will not discharge the indorser.
 
 ‡
 

 Judicial decisions of high authoi’ity dexxy that the indorser is to be regarded as a surety after his liability is fixed by due presentment, demand, and notice of the dishonor of the note, and insist that when his liability is fixed by those acts of the holder, that he, the indoi’ser, becomes a pi’ineipal debtor himself, subject only to the condition that the holder shall do no act to suspend, impair, or destroy his x’emedy over against prior parties to whom he has a right to resort for a remedy; and suppox-t to that view is certainly derived from the conceded fact that the indorser is answerable upon an independent contract, which makes it his legal duty to
 
 *589
 
 pay the note when duly presented and demanded and due notice is given to him of its dishonor; and also from the fact, which is also conceded, that he has not the same reason as may exist in common cases of suretyship to compel the creditor to active diligence against the maker, as he has in general the complete power, by paying the note, to reinstate himself in the possession and ownership of the same, and thus to entitle himself to a personal remedy against the maker.
 
 *
 

 Doubtless the indorser is in some respects a surety, but his principal relation to the instrument is that expressed by the commercial term applied to every party who contracts that obligation. Such a party to such an instrument contracts with the indorsee and every subsequent holder to whom the note is transferred, as follows: (1.) That the instrument and antecedent signatures are genuine. (2.) That he, the indorser, has a good title to the instrument. (3.) That he is competent to bind himself in such a contract. (4.) That the maker is competent to bind himself to the payment, and that he will, upon due presentment of the note, pay it at maturity. (5.) That if, when duly presented, it is not paid by the maker, he, the indorser, will, upon due and reasonable notice being given him of the dishonor, pay the same to the indorsee or other holder.
 
 †
 

 Confirmation that the indorser is not a surety in the general sense is also derived from the fact that he stands in the attitude of the drawer of a new bill, and that he is not primarily liable to make the payment, but only in case of the default of the maker and proof of due presentment, protest, and notice of dishonor, and that even then he cannot be joined with the maker, as the surety
 
 proper
 
 may be, because the maker and indorser are liable on different contracts.
 
 ‡
 

 
 *590
 
 Suppose that is so, when the theory is tested by the rules of commercial law, still it is insisted by the defendant that the contract of the indorser in this case was made in the State where he resides, and that the indorser, by the law of that State, is discharged, for the reason that the holder of the note omitted to seek his remedy against the maker, as thereto requested by the indorser.
 

 Support to that defence as exhibited in the second assignment of errors is attempted to be drawn from the statute of the State where the indorser resides, which provides in effect that a surety in and bond, bill, or note, may give the holder notice to sue the principal in writing, and if the holder fails to do so within thirty days the surety shall be discharged.
 
 *
 

 Founded on that statute the defendant alleges that the indorsement was made in that State, and the allegation also is that the consideration of the note was a debt due from the maker to the plaintiffs, and that it was made payable to the decedent and was by him indorsed merely as a means of procuring his liability for the payment of the said debt due to the plaintiffs.
 

 Grant that the contract of indorsement was actually executed in that State, still it is the better opinion that the case is not governed by the statute of that State already referred to, for the reason that the statute of the State does not include the contract of an indorser.
 

 Sureties in a note who become joint promisors with the maker, it may be conceded, are within the terms of that statute, as they stand in the same relation to the principal as in a bond given for the payment of money or the delivery of property. Authority to give the described notice arises immediately after the bond, bill, or note falls due, which evidently refers to the lapse of time specified in the contract; but the absolute obligation to pay does not arise in the case of an indorser before* notice of dishonor, which can never be given to the indorser till after the note is presented to the maker, and he has refused or neglected lo
 
 *591
 
 fulfil his promise to pay, so that the notice in writing requiring the holder to sue the indorser with the maker, would seem to be inapplicable before the liability of the indorser is fixed by demand of payment of the maker and his refusal to comply, and notice is given to the indorser of the dishonor of the note.
 

 Evidently the statute contemplates that the cause of action will accrue against the principal and surety at the same time, which is never the case with the indorser and maker. Such a notice may unquestionably be given by a surety proper, whether his contract is expressed in a bond, bill, or note, as soon as the instrument falls due; but it would be unreasonable to suppose that an indorser would give such a notice before his liability had become fixed, as it may be that such a demand to sue would operate as waiver of the right to notice of the dishonor of the note. Nor is it necessary to extend the operation of the statute so as to include an indorser, in order to satisfy the literal scope of the language employed.
 
 “
 
 Persons, bound as security for another,” are the words of the statute, which undoubtedly includes sureties proper in a bond, bill, or note, but it would be extending the words of the statute beyond their reasonable meaning, to hold that it includes an indorser whose liability is fixed by the required notice of the dishonor of the bill or note.
 

 Beyond all doubt the statute is one passed in derogation of the common law, even if restricted to sureties in the general sense, but it would be even more so, if by a broad construction, it could be extended to include indorsers upon bills of exchange and negotiable promissory notes.
 

 Statutes passed in derogation of the common law, it is everywhere held, should be construed strictly, nor is there any subject-matter to which that rule should be applied with greater intensity than where the attempt is made to change by local legislation the rules of commercial law, applicable tó that class of commercial instruments. Remedies of a statutory character, where the right to be enforced was unknown at the common law, are to be followed with strict
 
 *592
 
 ness, both as to the methods to be pursued and the cases to which they are to be applied.
 
 *
 

 When a statute alters the common law the meaning shall not be strained beyond the meaning of the words, except in cases of public utility, as when the end in view appears to be more comprehensive than .the enacting words.
 
 †
 

 Where the expression is in general terms, statutes are to receive such a construction as may be agreeable to the rules of the common law in cases of that nature, for statutes are not presumed to make any alteration in the common law, beyond what is expressed in the statute.
 
 ‡
 

 Argument to show that the statute in question, if it be construed to include the indorser of a bill or note, is in derogation of the rule of the commercial law, is scarcely necessary, as it appears to be well settled that it is no part of the duty of the holder of a note which has been dishonored and due notice thereof given to the indorser, to sue the maker merely because the indorser requests him so to do. On the contrary the holder has his choice to sue any one of the parties to the note who is in default, and it is the duty of the indorser, if he desires to secure the amount against the maker, to pay the note himself and thus to entitle himself to bring a suit against that party.
 
 §
 

 Such a holder, says Judge Story, is perfectly at liberty to sue any or all the parties at his pleasure, and he is not bound to any diligence in seeking his reimbursement. Nor can the indorser insist that the holder should, upon his request, use any such diligence. His remedy is to pay the note and then to seek recourse against the maker or any other party liable over to him.
 
 ||
 

 Such an indorser, that is, one whose liability is fixed by due notice of the maker’s default, is not entitled to the aid
 
 *593
 
 of a court of equity as a surety, as he has the right to pay the amount of the note to the holder, and to be subrogated to all his rights as against the maker.
 
 *
 

 None of these suggestions are intended to deny the well-known rule that the maker of the note is in general the principal debtor, nor that all the other parties are in a special sense sureties for him; they, if indorsers, being liable only in case of his default, unless they have waived demand and notice. Though all the other parties are sureties in respect to the maker, still they are not co-sureties, but each prior party is a principal in respect to each subsequent party.
 

 An indorser of a promissory note, though iu the nature of a surety, is not for all purposes entitled to the privileges of that character, as he is answerable upon an independent contract., and it is his duty to take up the note when it is dishonored.
 
 †
 

 Unquestionably there is in some respects a resemblance between the indorser and a surety, but in others there is none, as he does not in any case lose his character of indorser nor can he be made liable on the note without proof of due demand and notice.
 
 ‡
 

 Proof of the kind, if the demand and notice are season able and in due form, removes every condition from his liability except that the holder will do no act to suspend, impair, or destroy his right to indemnity from such other parties,to the instrument as are bound to save him harmless.
 
 §
 

 Negotiable promissory notes, like bills of exchange, are commercial paper in the strictest sense, and as such must ever be regarded as favored instruments, as well on account of their negotiable quality as for their universal convenience in mercantile transactions. Hence the law encourages their
 
 *594
 
 use as a safe and convenient medium for the settlement of balances among mercantile men, and any course of judicial decision calculated to restrain or impede their unembarrassed circulation would be contrary to the soundest principles of public policy.
 

 Mercantile law is a system of jurisprudence recognized by all commercial nations, and upon no subject is it of more importance that there should be, as far as practicable, uniformity of decision throughout the world.
 
 *
 

 Apply these several suggestions to the ease and it follows that the statute, when properly construed, does not include the indorser of a negotiable promissory note whose liability has become absolute by due notice of the dishonor of the note.
 

 Judgment affirmed
 

 ‡
 

 Brown v. Merrick, 16 Arkansas, 612; Biscoe v. Madden, 17 Id. 533.
 

 *
 

 Hanger
 
 v.
 
 Abbott, 6 Wallace, 539.
 

 *
 

 Brown
 
 v.
 
 Hiatts, 15 Wallace, 177.
 

 †
 

 Batesville Institute
 
 v.
 
 Kauffman, 18 Id. 155.
 

 ‡
 

 The Protector, 12 Wallace, 700; Adger
 
 v.
 
 Alston, 15 Id. 555; Semmes
 
 v.
 
 Insurance Company 13 Id. 158; Levy
 
 v.
 
 Stewart, 11 Id. 253.
 

 §
 

 Bank
 
 v.
 
 Hatch, 6 Peters, 258; McLemore
 
 v.
 
 Powell, 12 Wheaton, 556; Wood
 
 v.
 
 Bank, 9 Cowen, 194; Bank
 
 v.
 
 Hanrick, 2 Story, 416; Newcomb
 
 v
 
 
 *588
 
 Raynor, 21 Wendell, 108: Byles on Bills (11th ed.), 247 n. 1; 3 Story on Notes (5th ed.), g 413.
 

 *
 

 Philpot v. Briant, 4 Bingham, 721 ; Story on Notes (5th ed.), § 415.
 

 †
 

 Bank v. Myers, 1 Bailey, 418; Powell v. Waters, 17 Johnson, 179; Stafford v. Tates, 18 Id. 329 ; Bank v. Rollins, 13 Maine, 205 ; Page v. Webster, 15 Id. 256; Bank v. Ives, 17 Wendell, 502; Sterling v. Marietta and S. T. Co., 11 Sergeant & Rawle, 182 ; Kennard v. Knott, 4 Manning
 
 &
 
 Granger, 474.
 

 ‡
 

 Trimble v. Thorne, 16 Johnson, 159; Beebe v. Bank, 7 Watts & Sergeant, 875.
 

 *
 

 McLemore
 
 v.
 
 Powell, 12 Wheaton, 556; 2 Parsons on Notes and Bills, 243-245; 3 Kent (12th ed.), 114*.
 

 †
 

 Story on Notes (5th ed.), § 135; Story on Bills,
 
 §
 
 108; 2 Parsons on Bilis and Note 3, 23; Ogden
 
 v.
 
 Saunders, 12 Wheaton, 341 ; 3 Kent (12th ed ), 88; Bateman on Commercial Law, § 319.
 

 ‡
 

 2 Parsons on Bills and Notes, 25
 

 *
 

 Gould’s Digest of Statutes, 1015.
 

 *
 

 Lease
 
 v.
 
 Vance, 28 Iowa, 509.
 

 †
 

 Potter’s Dwarris on Statutes, 186.
 

 ‡
 

 9 Bacon’s Abridgment, by Bouvier, 24b; Sedgwick on Statutes, 2d ed 267; 1 Kent, 12th ed. 464; Broom’s Legal Maxims, 4th ed. 552.
 

 §
 

 Story on Notes, 5th ed. g 115, a.
 

 ||
 

 Ib. g 419; Beebe
 
 v.
 
 Banks, 7 Watts & Sergeant, 875.
 

 *
 

 Lenox v. Prout, 3 Wheaton, 525; Trimble v. Thorne, 16 Johnson, 153; Warner
 
 v
 
 Beardsley, 8 Wendell, 199; Samo
 
 v
 
 Same, 6 Id. 610; Frye v. Barker, 4 Pickering, 382; Hunt v. Bridgham, 2 Id. 581.
 

 †
 

 Ellsworth
 
 v.
 
 Brower, 11 Pickering, 320.
 

 ‡
 

 Bradford v. Corey, 5 Barbour, 462.
 

 §
 

 Woodman v. Eastman, 10 New Hampshire, 359; Warner v. Beardsley, 8 Wendell, 2d ed., 195 and note.
 

 *
 

 Goodman
 
 v.
 
 Simonds, 20 Howard, 364.