Nott,. J.,
delivered the opinion of the court:
' • This case presents the phenomenon of a meritorious cause of action and a vigilant claimant upon the one hand, with the bar of the statute of limitations upon the other. But the learned counsel for the claimanthas urged in an argument of great force and ingenuity that* notwithstanding the lapse of tóme, the statute does not bar a recovery, inasmuch as the claimant was prevented from bringing his action by tlie mistakes, negligences, and fraudulent concealments of the defendants’ officers; and he regards the case as coming within the spirit, if not the letter, of the decision of the Supreme Court in Bailey v. Glover (21 Wall., 342) and of the decisions of the same court in the cases of the Boston Banks (96 U. S. R., 30), Clark (id., 37), and Lippitt (100 id., 668).
*185 To the end that we may the better do justice to this argument we will now review the facts, not as they actually existed, chronologically, but as they appeared to the claimant up to the time of the bringing of this action.
On the 11th November, 1861, au assistant quartermaster rented from James G-reen the chief hotel in Alexandria, capable of containing 1,000 patients, for the uses and purposes of a military hospital, at a stipulated reut of $750 a month.
Mr. Greeenimmediately put the defendants in possession, a.nd the occupancy and user continued until the 30th June, 1865.
About the time the first monthly rent became due, Mr. Green applied to the quartermaster for the payment thereof. That, officer informed him that he was required to take the oath of allegiance to the govornment before the rent could be paid. For reasons which he stated, Mr. Green declined to take the oath at that time, and the rent was not paid.
Tn March, 1864, Mr. Green applied through his brother, a resident of Washington, to the Quartermaster-General for payment of the rent; and to his communication the Quartermaster-General replied, on the 28th March, 1864, “that compensation for the use of the property in question has not been paid because Mr. James Green is believed to be disloyal to the United States, and has refused and still refuses to take the oath of allegiance.”
On the 5th May, 1865, Mr. Green took the oath of allegiance, and on the 30th June following, the defendants vacated and surrendered the premises.
During the December term, 1867, this court decided that a similar lease of property situated on insurgent territory, likewise entered into by an assistant quartermaster, was void (Filor’s Case, 3 C. Cls. R., 25); and during the December term, 1869, the Supreme Court affirmed the judgment (9 Wall., 45), holding, moreover, that such a lease was not binding upon the government until approved by the Quartermaster-General, and that property so acquired and held must be regarded as taken by military appropriation, and the Court of Claims as inhibited from exercising jurisdiction by the Act tíh July, 1864 (13 Stat. L., 381).
Shortly after the close of the war, Mr. Green employed counsel, and through his counsel applied at the-Quartermaster-General’s Office for the orders or authority under .which the assistant quartermaster had acted when renting his premises; and after *186 the decisions in the Filor Case, bis counsel perceiving that no action could be maintained, either for the use and occupancy or on the assistant quartermaster’s agreement, urged a renewed search. But no authority of any description could be found.
Thus the matter stood until May, 1872, when Mr. Green applied by letter to the Secretary of War, calling attention to his claim and requesting its investigation and payment; which communication the Secretary of War referred to the Quartermaster-General. Mr. Green subsequently petitioned Congress for relief, and the Committee on War Claims wrote to the Quartermaster-General in May, 1876,, “for any information in your department relative to the validity or invalidity of this claim.” In consequence of these communications, the Quartermaster-General and -his assistants made several reports, one to the accounting officers of the Treasury and others to the Committee on War Claims of the House, which it is needless to quote, but from which it might well be inferred and was inferred that‘no papers whatever existed that would show authority in the assistant quartermaster for the renting of the claimant’s premises. It is not pretended by the claimant’s counsel that actual or intentional fraud pervaded these statements, but it is insisted that they constituted at law a fraudulent concealment of the claimant’s right of action; that without such authority Mr. Green could not maintain an action, and that so long as such authority was concealed or withheld from him' by the adverse party, his claim or cause of action did not accrue, and the statute of limitations did not begin to run.
In December, 1877, one of the clerks in the Quartermaster-General’s Office, who had previously searched for the papers, while searching among a mass of old papers in the fifth story of the office, unexpectedly found the application of the Surgeon-General, with the indorsements thereon, set forth in Finding II, which together constituted an authority of the highest and most unequivocal character for the assistant quartermaster’s action in renting the premises. The existence of the paper and its contents then first became known to James Green or his attorney; and within 6 years from the discovery of this paper, that is to'say, on the 14th of March, 1881, the claimants brought this action, and their counsel, as before remarked, insists that -their cause of action did not accrue within the intent and meaning of the statute until it was thus made known *187 to them, and that the case consequently is not barred by the statute of limitations.
Let us now classify these facts:
If James Green had been domiciled upon loyal territory it is well-nigh needless to say that the statute of limitations would have begun to run against each month’s rent from the day when an action might have been brought to recover it. But, as he was a resident and domiciled within the insurgent territory, he was, constructively, an enemy and unable to maintain an action, and the statute of limitations remained suspended until the courts of the United States were reopened to the inhabitants of Virginia by the Proclamation 2d April, 1866 (14 Stat. L., 811). (Sierra’s Oase, 9 C. Ols. B.., 224.)
On the 3d April, 1872, therefore, the statute of limitations barred an action unless the facts and circumstances relied upon precluded the statute from attaching to and operating upon the claim. The counsel for the claimants, as has been said, attaches great'importance to the representations made by the Quartermaster-General; but it must here be noted that all of those representations were made subsequent to the 3d April, 1872. The question therefore is, what fraudulent concealment was practiced during the period within which the statute would otherwise be running; that is to say, during a period of six years from the date of the proclamation 2d April, 18661
The answer to this question must be that no representations whatever were made to James Green, or to his counsel, during this period. All that appears is that at various times he made application at the Quartermaster-General’s Office for papers showing authority for the renting of the premises; that search was made, and none was found. His communication to the Secretary of War was not made until the 3d May, 1872, and the communication of the Committee on War Claims to the Quartermaster-General was not made until the 25th May, 1876.
We have so far considered the case upon the claimant’s theory of the law, viz, that no cause of action existed until the Quartermaster-General authorized the renting of the premises; and that the withholding of the approval from the knowledge of the claimant.operated as a fraud in law to suspend the running of the statute of limitations, or, in other words, that the claim did not accrue until the cause of action was made known. But *188 we are n'ot satisfied that this theory is properly applicable to the facts of this case. In the first place, it is by no means certain that the approval of the Quartermaster-General could not be established by circumstantial evidence. ' The fact that the assistant quartermaster in charge made monthly reports, from December, 1861, to July, 1865, showing the renting of the property and the rate agreed to be paid, coupled with the fact that the renting was brought to the personal knowledge of the Quartermaster-General almost immediately, and with his communication'to Mr. Green of March 28, 1864, in which he intimates no disapproval of the lease and states explictly that the reason the rent is not paid is because the claimant has not taken the oath of allegiance, would go far to bring the case within the decision of the Supreme Court in SpeecPs Case (8 Wall., 77).
In the second place, it is not necessary for us to pass upon the question; but we are inclined to think that the case of Bailey v. Glover (supra), upon which the claimant’s counsel relies, does not govern this one. It is a familar principle of equity jurisprudence that where the suit is founded on fraud the statute of limitations does not begin to run until the dis-' covery of the fraud; and this has been incorporated in most modern statutes of limitations. Thus the New York Code of Procedure; 1849 (§ 71, subd. 6), provides:
“An action for relief on the ground of fraud in cases which heretofore were solely cognizable by the court of chancery, the cause of action in such case, not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.”
But the present action is not founded upon fraud, but upon contract; and our attention has been called to no case where ignorance on the part of the plaintiff "has been held to suspend the running of the statute. *
The court is doubly reluctant to reach au unfavorable conclusion, for we regard the claim as well established in law and justice, and the claimant’s personal conduct as free from the ordinary imputation of negligence, and his only, mistake as having been brought about by the agents or officers of the government; but our conviction is that the case is barred by the statute of limitations. . • .
The judgment of the court is that the petition be dismissed.