**SALVONI v PILSON.**

No. 10282.

United States Court of Appeals
District of Columbia Circuit

Argued Feb. 2, 1950.

Decided March 20, 1950.

Writ of Certiorari Denied June 5, 1950.
See 70 S.Ct. 1030.

Mr. Matthias Mahorner, Jr., Washington, D. C., with whom Mr. Lawrence Cake, Washington, D. C., was on the brief, for appellant.

Mr. Edward Stafford, Washington, D. C., with whom Mr. Philip M. Fairbanks, Washington, D. C., was on the brief, for appellee.

Before PRETTYMAN, FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

This appeal presents the question whether war suspends the running of a statute of limitations against one who, though a citizen, is in enemy country. If so, the further question is presented whether actual access to the court during the war through counsel, in the circumstances hereinafter stated, continued the running of the statute which otherwise would have been suspended.

On October 13, 1934, a money judgment was entered in favor of appellant against the appellee in the Supreme Court of the District of Columbia, now the United States District Court. In the District of Columbia the life of such a judgment is twelve years unless it is revived.[1] 15 D.C.Code § 101 (1940). No action shall be brought and no scire facias or execution issued on a judgment after the expiration of twelve years. Id. § 102. If, however, during such period the creditor causes a scire facias to be issued and a fiat thereupon follows, the judgment is extended in effect for twelve years from the date of the fiat. Id. § 107. The Federal Rules of Civil Procedure, rule 81(b), 28 U.S.C.A., and the Rules of the District Court § 30(a) abolish the writ of scire facias and substitute an appropriate motion.

On September 22, 1948, more than twelve years after the date of the judgment, appellant filed a motion in the District Court to revive and extend it. The motion was denied. 81 F.Supp. 654. This was proper unless the statute of limitations was suspended by reason of the war. The appellant had resided in Italy since August 1937. From December 11, 1941 until September 15, 1947 the United States and Italy were at war. (Declaration of war was by Joint Resolution, December 11, 1941, 55 Stat. 797, 50 U.S.C.A.Appendix, preceding section 1; war was terminated by the President's Proclamation, September 15, 1947, 61 Stat. 1754). Appellant urges that the statute was tolled and that accordingly five years, nine months and four days, the length of the war, should be added to the life of the judgment. The effect would be to extend the time within which action could be taken on the judgment to July 16, 1952, in which event the motion should have been granted.

I. The code provisions, 15 D.C.Code §§ 101, 102 (1940) contain no exceptions which enlarge the twelve year period, though, as stated, an extension is permitted by action to revive taken within that time. (Id. § 107). No such extension was obtained in this case. Since the Revolutionary War, however, American courts have tolled statutes of limitations because of war. A suspension has been held to occur by reason of provisions in the treaty ending the war, as in Hopkirk v. Bell, 1806, 3 Cranch 454, 7 U.S. 454, 2 L.Ed. 497, and Dunlop v. Alexander, C.C.D.C.1808, 8 Fed.Cas. 87, No. 4,166.[2] But a treaty provision or spe-

1. The judgment was affirmed on appeal July 29, 1936, 65 App.D.C. 55, 79 F. 2d 411. No supersedeas bond having been filed during the appeal execution could have issued during that time. The twelve year period accordingly runs from the date of the lower court's judgment. 15 D.C.Code, § 101 (1940).

2. The provisions of the Treaty of Peace with Italy concerning Periods of Pre-

cific authority is not necessary. The leading case on the subject is Hanger v. Abbott, 1867, 6 Wall. 532, 539, 73 U.S. 532, 539, 18 L.Ed. 939. During a full discussion in an opinion by Mr. Justice Clifford, reviewing the English authorities and the status of the rule in the law of nations, the Supreme Court said:

"Total inability on the part of an enemy creditor to sustain any contract in the tribunals of the other belligerent exists during war, but the restoration of peace removes the disability, and opens the doors of the courts. Absolute suspension of the right, and prohibition to exercise it, exists during war by the law of nations, and if so, then it is clear that peace cannot bring with it the remedy if the war is of much duration, unless it also be held that the operation of the statute of limitations is also suspended during the period the creditor is prohibited, by the existence of the war and the law of nations, from enforcing his claim. * * * the disability to sue becomes absolute by the declaration of war, and is a conclusion of law. * * * Grant that the law of nations is that debts due from individuals of the enemy may, by the rigorous application of the rights of war, be confiscated, still it is a right which is seldom or never exercised in modern warfare, and the rule is universally acknowledged that if the debts are not so confiscated, the right to enforce payment revives when the war has terminated."

See, also, Ross v. Jones, 1874, 22 Wall 576, 89 U.S. 576, 22 L.Ed. 730; Osbourne v. United States, 2 Cir., 1947, 164 F.2d 767; Industrial Commission v. Rotar, 1931, 124 Ohio St. 418; 179 N.E. 135; Inland Steel Co. v. Jelenovic, et al., 1926, 84 Ind. A. 373, 150 N.E. 391; Colorado Fuel & Iron Co. v. Industrial Commission et al., 1923, 73 Colo. 579, 216 P. 706; Hackworth, Digest of International Law, Vol. VI, § 586 and authorities there reviewed; Hyde, International Law, Vol. III, 2nd Rev.Ed. § 611, et seq.

 We think it cannot be disputed that the war between the United States and

Italy had the effect of suspending for the period of its duration the statute of limitations applicable to action upon or revival of the judgment in this case unless some special circumstances prevent the application of the general rule. Appellant was in enemy country during the full period. This placed her in the status of an enemy for purposes of the Trading with the Enemy Act. 50 U.S.C.App. § 2 (1946), 50 U.S.C.A. Appendix, § 2. United States v. Krepper, 3 Cir., 1946, 159 F.2d 958, 965-966. She was cut off like others in Italy. The suspension rule cannot in reason be made less available to her than to citizens of other countries residing in Italy. We do not understand appellee to contend against the general rule. His position is that there are facts which take this case out of its application. We turn to those facts and their possible consequences.

II. On December 4, 1942, an attachment and garnishment issued on behalf of appellant in the District Court to satisfy the 1934 judgment. The garnishee answered. Appellant moved for oral examination of the garnishee. The appellee, the judgment debtor, objected on the ground, *inter alia,* that appellant was residing in the Kingdom of Italy, was under the control of a country with which a state of war existed with the United States and payment of any money by the garnishee was prohibited by the Trading with the Enemy Act, supra. The District Court allowed the motion for oral examination, thus in effect overruling the objection. The Alien Property Custodian entered an appearance in the case. Trial was had before a jury upon the appellant's traverse to the answer of the garnishee. A verdict was directed against the appellant for lack of evidence of any indebtedness of the garnishee to the judgment debtor. No appeal was taken.

 In the above circumstances the District Court in ruling upon the motion now under consideration to revive and extend the judgment held that the law of the case required a decision that the court had

scription contained in § B of Annex XVI [61 Stat. (Part 2) 1475] are made inapplicable to the United States by virtue of § D(2) of the same annex [61 Stat. (Part 2) 1478].

618

had jurisdiction in the garnishment proceedings, as appellant herself then insisted, that she had not been barred in prosecuting her action on the judgment and that the statute of limitations accordingly was not tolled. This in our opinion is not the correct position. The tolling of a statute of limitations during a war is based upon two reasons. First, "we are not to send treasure abroad for the direct supply of our enemies in their attempt to destroy us", and, second, "War, when duly declared or recognized as such by the war-making power, imports a prohibition to the subjects, or citizens, of all commercial intercourse and correspondence with citizens or persons domiciled in the enemy country", Hanger v. Abbott, supra. Where the Alien Property Custodian is able to, vest the proceeds or assets so as to prevent their reaching the enemy the first reason disappears. Such vesting would have been available to the United States in the circumstances of this case. See Birge-Forbes Co. v. Heye, 1919, 251 U.S. 317, 40 S.Ct. 160, 64 L.Ed. 286. But the other reason underlying the rule is that communication, intercourse, and access to the courts are prevented. That situation existed in the case at bar notwithstanding the partial access permitted to appellant through her counsel in the unfruitful garnishment proceedings. While in Italy during the war she was prevented by the Trading with the Enemy Act, 50 U.S. C.App. § 3(c) (1946), 50 U.S.C.A.Appendix, § 3(c), from communicating with anyone in this country except in the regular course of mail. We take notice of the absence of a regular course of mail between the two countries while at war. Mention should be made also of the provisions of the statute prohibiting the sending of any communications to an enemy, including, as stated before, a citizen of the United States living in Italy. Statutes of limitations ordinarily are not framed in contemplation of such conditions; they assume that the one to whom an obligation is owed may sue in a court. If he does not avail himself of the opportunity so to do within a stated time his remedy is barred and the matter is put at rest. But if war intervenes so that the remedy indeed does not exist during all of the statutory period, the time thus taken from it is added when the end of the war brings a resumption of intercourse, communication and access to a court. The full vigor of such a principle, long established by the judiciary and based upon a fundamentally just appraisal of conditions created by war, should not be weakened unless strong reasons so require. The rule has not been countered by legislation so far as we are aware, certainly not so far as the present situation is concerned.[3] The courts are open during a war to one who is in the United States though he be an alien enemy. This was fully discussed and clearly decided in Ex parte Kawato, 1942, 317 U.S. 69, 63 S.Ct. 115, 87 L.Ed. 58. But appellant was not here. She was in enemy country from which and to which intercourse was barred. The courts were not closed to her because of the enemy character which pertained to her at the time but because in fact normal means of access and communication were unavailable due to conditions created by the war and by the laws then in effect. It is true that the garnishment proceedings were allowed to be pursued. But this access to the court by appellant's attorneys is insufficient to deny to her the benefit of the rule tolling the statute of limitations. There is no evidence of communication by her with her attorneys during the war. From all that appears they acted under authority received before the war began. Their attempt on her behalf to obtain funds by garnishment, permitted by the court, demonstrates at most access to the court at a particular time. It cannot be presumed that no further steps would have been taken if the appellant had not been cut off in Italy. Had communication been available we cannot say that such action

3. Section 8 of the Trading with the Enemy Act, supra, after specifically providing for suspension of. the running of the. statute in certain circumstances, states: "* * * nothing herein contained shall be construed to prevent the suspension of the running of the statute of limitations in all other cases where such suspension would occur under existing law."

as a motion to revive the judgment would not have been initiated.

The exact question does not appear previously to have been decided. However, in First National Bank v. Anglo-Oester-reichische Bank, 3 Cir., 1930, 37 F.2d 564 a claim asserted by the Alien Property Custodian was held not to stop the tolling of the statute of limitations in regard to the debt. The court did not discuss the point but it was a necessary decision in the light of its conclusion.[4]

In the foregoing discussion we have referred to the period of the war in general terms; but the duration of the war should be considered in this case as limited to the period from December 11, 1941 to Ocotber 2, 1945. This is so because on the latter date the restrictions on business communication between the United States and Italy were lifted. See 9 Fed.Reg. 12425 (1945). The statute was accordingly suspended for three years, nine months and twenty-one days, thus extending the limitation in this case until August 1950, prior to which time the motion to revive and extend the judgment was filed.

III. Appellee contends finally that the ruling of the trial court permitting appellant to prosecute the attachment and garnishment proceedings notwithstanding she was in Italy and the war was on, established the law of the case which was binding on the court in passing upon the motion. The District Court upheld that contention in denying the motion. But the earlier ruling which permitted the garnishment and attachment action to proceed had to do with the question whether or not appellant then had the capacity to bring such action and whether the court could entertain it. The issue before the court below in the present case was quite different. When the court on April 19, 1943 overruled the motion to dismiss the garnishment no ruling was made or required with respect to the statute of limitations. The court was not called upon to consider and did not determine whether or not those proceedings prevented the tolling of the statute of limitations. When the motion to revive and extend the life of the judgment was subsequently filed the District Court was free to rule thereon as it thought proper. No law of the case had been established one way or the other as to the tolling of the period of limitations.

The order denying the motion we believe to be erroneous, and it is accordingly reversed.

---

4. It has also been held that the institution of an action on behalf of an infant will not terminate his disability so as to start the statute of limitations running against him. Geibel v. Elwell, 1895, 91 Hun. 550, 36 N.Y.S. 238. Galveston H. & S. A. R. Co. v. Washington, 1901, 25 Tex.Civ.App. 600, 63 S.W. 538. Bringing the action, say the courts, does not change the status of an infant and it is the status which causes the suspension of time for suing.