## MARCOS v. UNITED STATES.
### No. 50278.

United States Court of Claims.
Feb. 5, 1952.

548

Harold H. Martin, Washington, D. C., (George A. Nugent, Washington, D. C., and William R. Ives, Los Angeles, Cal., on the brief), for the plaintiff.

Thomas O. Fleming, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for the defendant.

Matthew E. McCarthy, New York City, filed a brief on behalf of Juan D. Quintos, et al., as amicus curiae, in support of plaintiff.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

On August 14, 1951, plaintiff filed suit to recover $594,900, which represents the alleged value of 2,366 head of cattle requisitioned from his ranch during the period from December 9, 1941 to January 28, 1942 by the United States Army forces operating on the Island of Mindanao in the Philippines. Defendant has moved, pursuant to Rule 16(b), 28 U.S.C., to dismiss plaintiff's petition on the ground that the claim is barred by the Statute of Limitations, 28 U. S.C.(Supp.IV) § 2501, 62 Stat. 976. Defendant concedes that the running of the Statute of Limitations is suspended in time of war as to persons who are without access to the courts, but contends that the suspension was lifted as to the Philippine Islands on April 16, 1945, on which date commercial mail service between the United States and Manila was resumed. Plaintiff insists that one of several suggested later dates should be selected as marking the lifting of the wartime suspension on the running of the Statute.

Section 2501 of Title 28 of the United States Code, Supplement IV, which forms the basis of defendant's motion, provides in part as follows:[1]

---

1. This section replaced 28 U.S.C. (1946 Ed.), § 262, 36 Stat. 1139, which was in effect at the time plaintiff's cause of action accrued. Section 262 provided as

"Every claim of which the Court of Claims has jurisdiction shall be barred unless the petition thereon is filed, or the claim is referred by the Senate or House of Representatives, or by the head of an executive department within six years after such claim first accrues.

\*      \*      \*      \*      \*      \*

"A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases."

■ Although this Statute does not mention war, we have had occasion in a recent case to consider the effect of war on the Statute of Limitations. In Standard-Vacuum Oil Company v. United States, 80 F. Supp. 657, 112 Ct.Cl. 137, remanded on other grounds, 339 U.S. 157, we reviewed the authorities and noted that the outbreak of war by implication suspends the running of the Statute of Limitations in the case of persons to whom the courts are closed or inaccessible. We relied principally upon the case of Hanger v. Abbott, 6 Wall. 532, 539, 18 L.Ed. 939, wherein the Supreme Court stated that: "Absolute suspension of the right, and prohibition to exercise it, exists during war by the law of nations, and if so, then it is clear that peace cannot bring with it the remedy if the war is of much duration, unless it also be held that the operation of the statute of limitation is also suspended during the period the creditor is prohibited, by the existence of the war, and the law of nations, from enforcing his claim. Neither laches nor fraud can be imputed in such a case, and none of the reasons on which the statute is founded can possibly apply, as the disability to sue becomes absolute by the declaration of war,

and is a conclusion of law. Ability to sue was the status of the creditor when the contract was made, but the effect of war is to suspend the right, not only without any fault on his part, but under circumstances which make it his duty to abstain from any such attempt."

Such a suspension necessarily occurs because of the prohibition in wartime of all commercial dealings and correspondence with persons in enemy or enemy-occupied territories. Likewise, the courts of the United States are closed during the war to the persons within such territories. The purpose of the Statute of Limitations is to bar stale claims which a party has been lax in asserting, but it is not intended to bar claims which war prevents a party from presenting to the court.

■ The problem of computing the period of time available to a claimant to present his cause of action after the war ceases and the suspension of limitations is lifted was not considered in the Standard-Vacuum case. However, according to recognized principles of international law, war simply suspends the running of the Statute as of the date of the outbreak of hostilities, (Note) 137 A.L.R. 1454, 1456; and where the cause of action accrues after war has commenced, the claimant is entitled to the full six-year period after the war's end within which to file suit. Sierra v. United States, 9 Ct.Cl. 224; Green v. United States, 17 Ct.Cl. 174. Where the Statute has begun to run prior to the commencement of war it has been held that the claimant is also entitled to the full statutory period of six years, and that the exact period of the war's duration should be deducted in determining the day on which the bar of limitations arises. Chuchuru v. Chutchurru, 10 Cir.,

follows: "Every claim against the United States cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement thereof is filed in the court, or transmitted to it by the Secretary of the Senate or the Clerk of the House of Representatives, as provided by law, within six years after the claim first accrues. The claims of married women, first accrued during marriage, of persons under the age of twenty-one years, first accrued during minority,

and of idiots, lunatics, insane persons, and persons beyond the seas at the time the claim accrued, entitled to the claim, shall not be barred if the petition be filed in the court or transmitted, as aforesaid, within three years after the disability has ceased; but no other disability than those enumerated shall prevent any claim from being barred, nor shall any of the said disabilities operate cumulatively."

185 F.2d 62; see Semmes v. Hartford Insurance Co., 13 Wall. 158, 160, 20 L.Ed. 490. In Salvoni v. Pilson, 86 U.S.App.D.C. 227, 181 F.2d 615, 618, the court stated that: "Statutes of limitations * * * assume that the one to whom an obligation is owed may sue in a court. If he does not avail himself of the opportunity so to do within a stated time his remedy is barred and the matter is put·at rest. But if war intervenes so that the remedy indeed does not exist during all of the statutory period, the time thus taken from it is added when the end of the war brings a resumption of intercourse, communication and access to a court."

■ We hold, therefore, that the war with the Japanese merely suspended the running of the Statute, and at the termination of the war the plaintiff, whose claim arose during the period of suspension, was entitled to the full six-year period within which to bring his action.

The next problem confronting us. is to determine the event which terminated the war and brought to a close the period of suspension of the Statute of Limitations. A number of dates and events have been presented for our consideration, in this case, and in the related cases of Tan v. U. S., Ct.Cl., 102 F.Supp. 552; Francisca De Guia and Beatriz B. Palmares, No. 50342; Paulino Lorenzo, No. 50357; and Raymundo F. Navarro, No. 50358; this day decided. We shall here discuss the various contentions urged in all five cases with regard to the lifting of the suspension of the Statute. Because the practice of this court has been to permit the filing of petitions by mail, defendant urges us to adopt April 16, 1945, the date on which commercial mail service between the United States and Manila was resumed. However, this date would be manifestly unjust to some of the claimants who resided on islands other than Luzon, and which were not liberated until a later date. Certain of the plaintiffs suggest that December· 31, 1946, the date of the President's Proclamation No. 2714, 61 Stat. 1048, 50 U.S.C.A. Appendix, § 601 note, officially declaring a "Cessation of Hostilities of World War II", should be selected because it has been regarded as marking the termination of the war for many other purposes.

Other dates suggested include July 4, 1946, the date of the Philippine Independence, Presidential Proclamation No. 2695, July 4, 1946, 60 Stat. 1352, 48 U.S.C.A. § 1240 note; September 2, 1945, the date of the formal surrender by Japan, 59 Stat. 1733; and V-J Day, August 14, 1945, the day of the Japanese cease-fire order.

■■ The logical date to select as lifting the suspension of the Statute of Limitations under the circumstances of this case is the day of the formal surrender of the Japanese, September 2, 1945. It was on this occasion that the above-mentioned reasons for suspending the running of the Statute ceased to exist, inasmuch as commercial intercourse by the United States with the Philippine Islands· was thereby restored, and likewise, access to this court by all Filipinos once again became possible. In Green v. United States, supra, 17 Ct.Cl. at page ·187, this court reached a similar conclusion, holding that the suspension of the running of the Statute during the Civil War was lifted at the time the courts of ·the United States were reopened to inhabitants of the seceded states. More recently, the United States Court of Appeals for the District of Columbia recognized this view in Salvoni v. Pilson, supra, and held that the Statute commenced to run again, as to persons residing in Italy during the war, on October 2, 1945, at which time the restrictions on business communication between the United States and Italy were lifted. We conclude that plaintiff was entitled and required to present his claim at any time during the period from September 3, 1945, through September 2, 1951; and, as plaintiff's claim was filed on August 14, 1951, it is timely.

The court has also considered the question of whether a Filipino may now entertain a suit in this court. Citizens of the Philippine Republic have been aliens within the meaning of Section 2502 of Title 28, 62 Stat. 976, since July 4, 1946, when the Philippine Islands were granted their independence. Section 2502 provides as follows: "Citizens or subjects of any foreign government which accords to citizens of the United States the right to prosecute claims against their government in its courts may

sue the United States in the Court of Claims if the subject matter of the suit is otherwise within such court's jurisdiction."

■ Plaintiff alleges that a similar right is granted to citizens of the United States under the provisions of Public Law No. 3083 of the Philippine Legislature, March 16, 1923, 18 P.L. of Philippines 169, which Act continues to be the law of the Philippine Republic. By virtue of Section 1 of this Act, the Government of the Philippine Islands consented to be sued "upon any moneyed claim involving liability arising from contract, express or implied, which could serve as a basis of civil action between private parties." From an examination of the remaining sections it appears that American citizens are granted the same right to prosecute such claims against the Philippine Government as is granted to the citizens of the Philippine Republic. The admission of American citizens to the Philippine courts with all of the rights of Philippine citizens as against the Philippine Government satisfies the requirements of Section 2502, and the fact that the consent of the Philippine Government to be sued is more restricted than the consent of the United States Government to be sued, is not controlling. Brodie v. United States, 62 Ct.Cl. 29, 46; cf. United States v. O'Keefe, 11 Wall. 178, 20 L.Ed. 131. Plaintiff is, therefore, entitled to maintain this action.

We conclude that although plaintiff is a Filipino and an alien, he may sue the United States in the Court of Claims because a reciprocal right against the Philippine Government is granted to United States citizens; that although plaintiff's cause of action arose in 1941 and 1942, after the outbreak of hostilities, it was not barred by the Statute of Limitations which was suspended during the war; that the suspension was lifted on September 2, 1945, giving plaintiff six years thereafter to sue; and, that plaintiff's suit, having been filed on August 14, 1951, is timely. Accordingly, defendant's motion to dismiss is denied.

It is so ordered.

JONES, C. J., and MADDEN and LITTLETON, JJ., concur.

WHITAKER, Judge (dissenting).

I cannot agree that a litigant in this court is entitled to the full statutory period of six years in addition to the time during which he was denied access to the courts on account of war. I think the same limitation should apply to a person unable to sue because of war as applies to those persons specifically excepted from the six-year limitation by section 262 of Title 28 U.S.C. Section 262 was the predecessor of section 2501 of Title 28 U.S.C., 62 Stat. 976, quoted in the majority opinion. Title 28 was amended to read as quoted in the majority opinion after this cause of action arose and, therefore, I think section 262 of the old Title 28 is applicable, although both sections perhaps mean the same thing.

It is true that prior cases, holding that the statute of limitations is tolled so long as the courts of a country are closed to a litigant on account of war, have allowed the full statutory period, plus the time during which the courts were closed to the litigant. The leading case is Hanger v. Abbott, 6 Wall. 532, 18 L.Ed. 939. The rule established by this case was subsequently approved in Braun v. Sauerwein, 10 Wall. 218, 222, 19 L.Ed. 895. These are the only decisions of the Supreme Court on this question. Neither of them, however, relate to suits in the Court of Claims.

However, in Sierra v. United States, 9 Ct.Cl. 224, 230–231, this court held that the statute was suspended during war, and that after the war was over the litigant had the full statutory period within which to bring suit. This case was cited with approval by this court in a subsequent case, Green v. United States, 17 Ct.Cl. 174. In neither of these cases, however, was consideration given to the fact that the statute of limitations applicable to the Court of Claims made an exception of claims of persons under certain disabilities and allowed only three years after the disability had ceased, instead of the full six, for the assertion of the claim. No consideration was given to this by either of these two cases. The court merely followed the rule laid down in Hanger v. Abbott, supra, without any discussion as to whether or not this rule applied in the Court

of Claims, in view of the peculiar wording of the statute applicable to this court.

Section 262 of Title 28 U.S.C. provides that every claim against the United States cognizable by this court "shall be forever barred" unless the petition is filed within six years, but it makes these exceptions to this rule, to wit, married women, minors, idiots, lunatics, insane persons, and persons beyond the seas. As to these, it provides that they may file a petition within three years after the disability has ceased.

Then it says, "but no other disability than those enumerated shall prevent any claim from being barred".

Now, we say that there is another disability that will prevent a claim from being barred after six years, to wit, the fact that the litigant did not have access to the Court of Claims because of war. In so holding we are in fact doing what the Act prohibits; we are adding another disability that prevents a claim from being barred. I think we are justified in doing so, but if we do so hold, then it seems to me we must place the same limitation on a suit by a person under this disability that the statute places on a suit by those under the disabilities it mentions.