## DAYVAULT & NEWSOME v. TOWNSEND.
### (No. 8707.)

(Court of Civil Appeals of Texas. Dallas. Oct. 28, 1922.)

1. **Contracts ⊂⇒176(10)—Where facts are undisputed, question whether time is of essence is for the court.**

Where facts bearing upon terms of contract are undisputed, the question whether time was of the essence is for the court.

2. **Contracts ⊂⇒211—"Essence" as applied to time of performance defined.**

"Of the essence" does not mean merely that time is material, but the word "essence" as applied to performance means that performance by one party at specified time is essential to enable him to require performance from the other party.

[Ed. Note.—For other definitions, see Words and Phrases, Essence.]

3. **Sales ⊂⇒87(3)—Evidence that buyer wanted goods for a particularly favorable selling period held to show time of delivery was of the essence.**

Evidence that seller understood buyer selected August 30th as delivery date merely to postpone delivery to latest date agreeable to seller, but that buyer wanted delivery then, because later shipment would defeat his best selling period, held to show time of delivery was of the essence.

4. **Sales ⊂⇒88—Whether parties contemplated delivery might be made within reasonable time after date designated held for jury.**

Where time was claimed to be of the essence, and buyer claimed right of rescission for delayed delivery, it was improper to refuse to submit whether the parties contemplated actual delivery was to be made within reasonable time after date selected as latest seller could deliver.

5. **Sales ⊂⇒182(3)—Reasonable time for, and cause of, rescission by buyer rejecting delivery held for jury.**

Where agreed date of delivery was August 30th, and buyer received bill of lading September 17th and the goods on October 10th and wrote seller on October 14th, he was returning shipment, but had not before complained of delay, it was proper to submit question of reasonable time of rescission, and, since seller contended for estoppel against rescission in that it was not solely because of the delay, also to submit whether rescission was grounded on delayed delivery.

Appeal from Rockwall County Court; J. K. Wells, Judge.

Action by Dayvault & Newsome against T. L. Townsend. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

McCutcheon & Church, of Dallas, for appellants.

E. D. Foree, of Rockwall, and Crane & Crane, of Dallas, for appellee.

VAUGHAN, J. This suit was filed by appellants to recover the sum of $590.50, alleged to be due them by appellee as the price contracted to be paid for a certain lot of overalls purchased June 14, 1920, to be shipped by August 30, 1920, from Greensboro, N. C., to appellee at Rockwall, Tex.

Appellants were partners, composing the firm known as Dayvault-Newsome Co., at Dallas, Tex., and Dayvault & Newsome at Chattanooga, Tenn. Appellee was a retail merchant doing business at Rockwall, Tex.

Appellants allege that on the 14th day of June, 1920, they sold $590.50 worth of overalls to appellee, f. o. b. factory. Terms, net, 30 days. Same to be shipped by freight, the shipping date specified to be August 30, 1920.

Appellee claimed, and the facts show, that the overalls were not shipped until September 15, 1920. The sole defense of the appellee was that, as the goods had not been shipped until September 15, 1920, he had the right to rescind the contract and refuse the goods.

Appellants pleaded a waiver of delay and estoppel by the appellee, and that the goods, under the existing conditions and within the contemplation of the parties, were shipped within a reasonable length of time. The above statement from the pleadings we believe to be sufficient to develop the issues presented on this appeal.

The following are the special issues submitted to the jury and answers thereto:

"Issue No. 1. Was the time for the final shipment of the goods in question of the essence of the contract made between plaintiff and defendant for the purchase and sale of said goods? Answer: Yes.

"Issue No. 2. Did plaintiffs ship said goods at or before the time provided for in their contract with defendant? Answer: No.

"Issue No. 3. What was the date of final shipment of said goods as provided for in the contract between the parties? Answer: August 30, 1920.

"Issue No. 4. What was the date of shipment by plaintiffs of said goods? Answer: September 15, 1920."

Judgment was rendered for appellee on said answers.

The following are the material facts established on the trial of the cause: The order was taken to ship said overalls from the factory at Greensboro, N. C., on August 30, 1920, and shipment was made on September 15, 1920; that the overalls arrived at destination and were delivered at appellee's store on October 10, 1920, where same remained until October 14, 1920, on which date the appellee wrote appellants a letter stating he was returning said shipment to Chattanooga, Tenn., one of the offices of appellants, and, by way of explaining why he was returning said merchandise, stated:

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"We regret very much that we are forced to take such action but poor crops and low price cotton are causing almost no collections and very little selling. We are trying to save our credit and to pay our bills as promptly as possible and hope you can appreciate our position."

On the 17th day of September, 1920, appellee received a bill of lading and statement from appellants showing that said merchandise had been shipped on September 15, 1920. Appellee did not notify appellants, or any one acting for or representing them, that he intended to cancel said order on account of said delay.

This suit was filed by appellants on November 18, 1920. Prior thereto appellants and appellee had a conversation at appellants' office in Dallas, Tex., in reference to said shipment of merchandise having been refused by appellee. In said conversation appellee did not claim the right to cancel said order on account of said delay in the shipment. As shown by the record, this right was first asserted by appellee in his first amended original answer, filed in said cause on July 4, 1921.

On October 14, 1920, appellee consigned said goods to appellant at Chattanouga, Tenn., shipping same from Rockwall by freight. Said goods remained in Chattanooga until December 15, 1920, on which date appellee, without the knowledge or consent of appellants, had them reshipped to Rockwall, Tex., to appellee as consignee. Said merchandise remained in the freight office of the transportation company at Rockwall until April 4, 1921, where, by agreement without prejudice between the parties, said merchandise was from that date to be held by the railroad company without storage charges; that appellants have never had from the date of shipment from Greensboro, N. C., possession of said merchandise or exercised any control over same.

The following testimony bears upon the issue as to whether or not time was of the essence of the contract: Wilbur A. Davis, witness for appellants, testified:

"I did not give Mr. Townsend anything in writing; I just took the order in a memorandum book; I do not find a copy of this order in my order book; I do not know whether I mailed it to Mr. Townsend or not. The shipping date for the bill of goods was August 30, 1920; that was the last shipping date I had on the overalls. I couldn't take an order for shipment any later than that. My instructions were that the factory wouldn't accept any order for September. I had those instructions from Mr. Newsome and Mr. Dayvault. Mr. Townsend did not want the overalls shipped any sooner than August 30, 1920; he just asked me what was the shipping date and I told him the last shipping date was August 30, 1920, and this was June 14th, which would give from June 14th to August 30th, two months and a half. Some of the merchants that I sold this stuff to wanted it shipped in September, but I couldn't take an order that way. If I sent in an order that way they would have sent it back to me. The goods I sold Mr. Townsend were to be shipped August 30, 1920; that was the latest shipping date I had. That was the agreement between Mr. Townsend and myself; that was the last shipping date. I wrote on this order 'Ship to Fair Drygoods Co. 6–14–20, through Dayvault-Newsome Co. at Chattanooga; how ship, freight; when, Aug. 30; terms, net 30; salesman, W. A. Davis.'"

Appellee testified as follows:

"I remember him [Wilbur A. Davis] mentioning the fact to me that he had later shipping dates than most anybody else. I remember asking him what that shipping date was and he told me, as well as I remember, instead of saying August 30, 1920, he said up to September 1st, which would practically mean August 30th. I gave him the order in the regular way to be shipped on August 30th, or, as I remember, September 1, 1920; that was the last day it was to be shipped. I would say there was not a word mentioned about any shipping date later than August 30th or September 1st; that would be the extreme limit. I did not tell him he could ship them any time after September 1st. It was part of the understanding and agreement that they were to be shipped not later than September 1st. I would not have ordered the goods if he had fixed the final shipping date later than September 1st, because it is a well-known fact in this country that, along about that time, a great many cotton pickers are shipped in here, and corn to gather, and gin work and so on, and that there is a big demand for overalls right about that time. I would say that fifteen days during the month of September any store in this town would have more orders and sell more overalls than it would through the months of November and December and half of October. In other words, fifteen days at the right time, I think, is equal to two months and a half later on. I was ordering the overalls with that condition in view."

Appellants requested, and the court refused to submit, the following special issues:

"No. 1. You are instructed to return a verdict in favor of plaintiffs herein for the amount sued for because, as a matter of law, the defendant has waived by his acts and conduct the shipment of said merchandise after August 30, 1920.

"No. 2. Was the merchandise involved in the instant suit to be shipped within a reasonable time after August 30, 1920, as within the contemplation of the parties at the time of entering into the contract? Answer 'Yes' or 'No.'

"No. 3. Did the defendant, T. L. Townsend, after he learned that the merchandise involved in the instant suit had not been shipped until after the 30th day of August, 1920, attempt to cancel or rescind the contract in a reasonable length of time? Answer 'Yes' or 'No.'

"No. 4. Did the defendant attempt to rescind or cancel the contract for the merchandise involved in this case within a reasonable length of time, on the ground that the merchandise had not been shipped by August 30, 1920? Answer 'Yes' or 'No.'"

[1] Appellants contend that the court erred in submitting special issue No. 1, because whether or not time was of the essence of the contract involved in the litigation was a question of law for the court, the facts being undisputed in reference to the terms of the contract. This contention must be sustained, as the record, on a careful investigation, fails to disclose the existence of any dispute in reference to the terms of the contract. Therefore, whether or not "time" was of the essence of the contract should have been determined by the trial court and not submitted to the jury. Leaming v. Wise, 73 Pa. 173.

[2] Time is always more or less an essential part of every contract, as well as a part of the consideration inducing the parties to enter into the contractual relationship. "Of the essence" does not mean merely "that time is a material matter, but that it is so material that exact compliance with the terms of the contract in this respect is essential to the right to require counter performance." The word "essence" as applied to time for the performance of a contract means "that the performance by one party at the time specified in the contract, or within the period specified in the contract, is essential, in order to enable him to require performance from the other party." Williston on Contracts, vol. 2, § 846.

[3] We are of the opinion that the evidence above quoted makes time so material for the performance of the contract on the part of appellants that exact compliance with same in respect to the time of shipment was essential to the right to require counter performance on the part of appellee.

[4, 5] Special issues 2, 3, and 4 requested by appellants properly submitted to the jury material questions presented by the pleadings and supported by the evidence, and which were not properly placed before the jury by the issues submitted. Therefore the refusal to submit such issues was material error; especially as to issues 3 and 4, which submitted the question of cancellation or rescission of the contract on the part of appellee within a reasonable length of time after he learned of the breach as claimed by him to have been made by appellants in failing to ship the goods within the time fixed by the contract. The materiality of this issue cannot be doubted, as it was appellee's duty to have acted promptly on the occurrence or discovery of the breach of the contract as claimed by him, and, if he was guilty of undue delay, he must be regarded as having waived his right to rescind and elected to treat the contract as still subsisting. Therefore, as to whether or not he acted within a reasonable length of time, and, further, whether or not he attempted to rescind or cancel the contract for the purchase of the merchandise within a reasonable length of time, on the ground that the merchandise had not been shipped by August 30, 1920, were issues of vital importance to appellants, which should have been passed on by the jury. F. L. Linch v. Paris Lbr. & Grain Ele. Co., 80 Tex. 23, 15 S. W. 208; Morgan v. McKee, 77 Pa. 228.

Because of the error above pointed out, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.