## BRAUN *v.* SAUERWEIN.

1. Although the running of a statute of limitations to the right of suing may be suspended by causes not mentioned in the statute itself, as, for example, by the fact that the plaintiff, without default of his own, has been disabled by a superior power from the capacity to sue; still, when by the removal of the disabling power the right reverts, the question in a case where the statute is afterwards set up to bar a suit, will be, " *How long* did the suspension which it caused continue?" And the operation of the statute will not be prevented for a longer time than that during which the suspension was an enforced one.

*Ex. gr.* Where an act of Congress, which took effect August 1st, 1866, enacted that no suit to recover a tax once paid should be maintained, until appeal had been duly made to the Commissioner of Internal Revenue, and his decision had, unless such suit was brought within six months from the time of such decision, &c.

*Held*—in a case where suit was brought February 18th, 1868, to recover a tax that had been paid February 2d, 1864, and where appeal to the commissioner had been made August 20th, 1867, and decided by him Janu-

---

ary 11th, 1868,—that a statute of the State where the suit was brought which barred such suits, unless brought within three years from the time when the right of action accrued, operated; the plaintiff's appeal having been pending only from August 20th, 1867, to January 11th, 1868 (four months and twenty-two days), and the time which he permitted to elapse between August 1st, 1866 (when the act took effect), and August 20th, 1868 (when he appealed), having been lost by his own delay, and not taken from him by any superior power. And it thus appearing that, deducting the time during which the appeal was pending (four months and twenty-two days), and during which alone he was disabled from the four years and sixteen days that elapsed between the inception of his right to sue and the commencement of his suit, there remained much more than three years, in which he was under no legal disability.

2. This view is not altered by the fact that the replication to the plea setting up the statute of limitations, averred that the appeal was "*duly*" made, its date not being set forth; the rejoinder first setting forth the date of the appeal and of the decision of it.

8. The effect of such a replication (which might have been demurred to), was only to aver that the statute was suspended for a time; nothing more being well pleaded by it.

ERROR to the Circuit Court for the District of Maryland; the case being thus:

An act of Congress, passed July 13th, 1866,* and which by its terms took effect on the 1st of August of that year, enacts:

"That no suit shall be maintained in any court, for the recovery of any tax alleged to have been erroneously or illegally assessed or collected, until appeal shall have been duly made to the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of said commissioner shall be had thereon, unless such suit shall be brought within six months from the time of said decision, or within six months from the time this act takes effect. *Provided*, that if said decision shall be delayed more than six months from the date of such appeal, then said suit may be brought at any time within twelve months from the date of such appeal."

With this statute in force, Braun, on the 18*th of February*, 1868, brought suit in one of the State courts of Maryland

---

* § 19, 14 Stat. at Large, 152.

against Sauerwein, a collector of internal revenue, to recover a sum of money alleged to have been illegally exacted by him, in virtue of his office, from the plaintiff.

The defendant pleaded a statute of limitation of the State of Maryland, which bars actions of this nature unless brought within three years from the time when the right of action accrued. The plaintiff replied, that after the defendant had received the money for which the suit was brought, the plaintiff *duly* appealed from the assessment and collection thereof made by the defendant, to the Commissioner of Internal Revenue of the United States, according to the provisions of law and in conformity to the regulations of the Secretary of the Treasury; that a decision of his appeal was not made until *on or about* the —— day of February, 1868, and that his suit was brought within six months from that date. But the replication, it will be observed, did not aver *when the appeal was taken, nor the day when it was decided.* The case being removed after this into the Circuit Court of the United States, under certain acts of Congress,* the defendant rejoined, averring that the money alleged to have been taken, was received on the 2d day of February, 1864, and not afterwards, and that the appeal of the plaintiff to the Commissioner of Internal Revenue was taken on the 20th of August, 1867, and not before; and that the decision of the appeal by the commissioner was made on the 11th of January, 1868. To this rejoinder the plaintiff then demurred. The court overruled the demurrer, and judgment went for the defendant.

The case, therefore, as worked out by the pleadings, and with its facts arranged in order of time, stood thus:

| | |
|---|---|
| The collector took the money and the cause of action arose, | February 2, 1864. |
| The act of Congress took effect, | August 1, 1866. |
| The appeal to the Commissioner of Internal Revenue was taken, | August 20, 1867. |
| The commissioner decided the appeal, | January 11, 1868. |
| The suit was brought, | February 18, 1868. |

It thus appeared that more than three years had elapsed

---

* See 12 Stat. at Large, 756; 14 Id. 46.

after the cause of action accrued before the suit was brought, and more than three years before the appeal was taken to the Commissioner of Internal Revenue; that the statute began to run on the 2d of February, 1864, and supposing that nothing intervened to suspend its operation, that the bar would have been complete on the 2d of February, 1867.

The question was, whether the act of Congress of the 13th of July, 1866, had, under the facts of this case, worked *such* a suspension as that the suit, though thus brought four years and sixteen days after the cause of action accrued, was still *un*barred by the Maryland statute.

The court below, in overruling the demurrer, decided that it had not; and the correctness of that view was the only important point now here on error.

*Messrs. Brent, Crittenden, and Hughes, for the plaintiff in error:*

As we could not sue after the 13th July, 1866 (the date of the act of Congress), until an appeal taken and a decision thereon, and as our replication avers that the appeal was *duly* made (a matter not denied in the rejoinder), the appeal must be taken to have been in time. The rejoinder then shows a decision of that appeal on the 11th day of January, 1868, and this suit being brought on the 19th February, 1868, some thirty-nine days after the appeal, it results that if we deduct the whole term between the 13th July, 1866, and 11th January, 1868 (date of the decision), we have only two years, five months, and twenty days left between the receipt of the money on the 2d February, 1864, and the bringing of this suit on the 19th February, 1868. The State statute of three years could not therefore bar the action.

We make no point as to whether the suit was properly transferred under any act of Congress, though, possibly, one might be raised.

*Mr. C. H. Hill, Assistant Attorney-General, contra.*

Mr. Justice STRONG delivered the opinion of the court.

It is undoubtedly a general principle, that when a statute of limitation has begun to run, a disability to sue subse-

quently intervening does not stop its running, even though the disability be one of those expressly recognized in the statute itself. Notwithstanding this, however, the courts in this country have engrafted upon such statutes at least one implied exception. Thus, in *Hopkins* v. *Bell*,* this court held that the treaty of peace of 1783, by which the independence of the United States was acknowledged by Great Britain, prevented the operation of a Virginia statute of limitations upon debts due to British subjects, and contracted before the treaty was made. In that case, though the statute had begun to run before the commencement of the war in 1775, the time during which it had thus run was not allowed to be added to any time subsequent to the treaty. This, perhaps, is not to be regarded as a clearly judicial exception, incorporated into the Virginia statute. It was rested upon the force of the treaty which declared that creditors on either side (British or American), should meet with no lawful impediment to the recovery of the full value, in sterling money, of all *bona fide* debts theretofore contracted. The treaty, however, was not the act of Virginia, and the suspension of the statute's operation was by something outside of the statute itself. But in *Hanger* v. *Abbott*† it was ruled, after grave consideration, that the time during which the courts of the recently rebellious States were closed to the citizens of other States, is, in suits brought by such citizens, to be excluded from the computation of the time fixed by statutes of limitation, within which only suits may be brought, and this, though the statutes contain no such exception. In other words, it was held that the statutes of limitations of the insurrectionary States were suspended, while the courts in those States were closed by the war. Similar decisions have been made in the State courts. They all rest on the ground that the creditor has been disabled to sue, by a superior power, without any default of his own, and, therefore, that none of the reasons which induced the enactment of the statutes apply to his case; that unless the statutes

---

* 3 Cranch, 454.    † 6 Wallace, 532.

cease to run during the continuance of the supervening disability, he is deprived of a portion of the time within which the law contemplated he might sue.

It seems, therefore, to be established, that the running of a statute of limitation may be suspended by causes not mentioned in the statute itself. Assuming, then, that the act of Congress did, for a time, stop the running of the Maryland statute against the plaintiff, the inquiry remains, how long did the suspension continue? To this there can be but one answer. Manifestly, only so long as he was prevented from suing by the act of Congress. The act, speaking from August 1st, 1866, prohibited a suit until he should appeal to the Commissioner of Internal Revenue, and until his appeal should be decided, unless the decision should be postponed longer than six months, in which case he was at liberty to sue within a year from the time when his appeal was taken. The interval between the appeal and its decision, then, was the entire period during which he was disabled by the act. If, in fact, he was disabled a longer time, the prolonged disability was caused by his own neglect to appeal. The replication to the defendant's pleas fail to state when the appeal was made. True, the averment is, it was "*duly*" made, but that is pleading a conclusion of law rather than a fact. The time when the appeal was taken was material to show how long the statute of limitation was suspended. The effect of the replication was only to aver that the statute was suspended for a time. Nothing more was well pleaded by it. Instead of meeting it by a demurrer, however, the defendant rejoined, setting forth the date of the appeal, and the date of its decision, and the plaintiff demurred to the rejoinder. It is thus admitted that the plaintiff's appeal was pending only from August 20th, 1867, to January 11th, 1868, four months and twenty-two days. The act of Congress denied to him a right to sue during that period, and no longer. The time which he permitted to elapse between August 1st, 1866 (when the act of Congress took effect), and August 20th, 1868, when he appealed, was not taken from him by any controlling power. He lost it by his own delay.

It would be giving a most unreasonable construction to the act were we to hold, that by merely delaying to appeal, when it was all the time in his power, he could have suspended the running of the statute indefinitely. Deducting, then, the four months and twenty-two days, during which his appeal was pending, and during which he was disabled, from the four years and sixteen days that elapsed between the inception of his right to sue and the commencement of his suit, there remain much more than three years in which he was under no disability, except such as was imposed by himself. The judgment of the Circuit Court on the demurrer was, therefore, correct.

It remains only to add that the case was well removed into the Circuit Court of the United States.*

JUDGMENT AFFIRMED WITH COSTS.

---

* Hodgson *v.* Milward, 3 Grant, 412 and 418; Bigelow *v.* Forrest, 9 Wallace, 339.