**EPTING v. NEES.**

No. 2388.

Court of Civil Appeals of Texas. El Paso.
Feb. 6, 1930.
Rehearing Denied March 13, 1930.

718

Mack & Mack, of Fort Worth, and Saunders & Atchison, of Breckenridge, for plaintiff in error.

D. Vance Swann, of Swanton, and G. G. Gannon and Baker, Botts, Parker & Garwood, all of Houston, for defendant in error.

HIGGINS, J.

On April 17, 1928, between 8 and 9 o'clock p. m. Gordon S. Nees, defendant in error, plaintiff in the court below, and hereinafter called plaintiff, was traveling in a coupé going east upon the Bankhead highway. Shortly after dark he passed a truck with trailer attached, traveling west. When about 25 or 50 feet from the approaching truck he saw the dim outline of a house loaded on the truck. His left arm was resting in the window of the coupé, evidently projecting beyond the window sill. The pavement upon the highway here was 16 feet wide. As he approached the truck, plaintiff testified, he slowed down and undertook to pass upon the right-hand side. As he passed he heard his windshield break. A moment later he discovered his left arm was practically severed by a blow from the load upon the truck. Passers upon the highway stopped, staunched the flow of blood and carried plaintiff to Odessa where his arm was amputated at the elbow. The truck was owned by plaintiff in error, hereinafter called defendant, who operated a truck line for hire. The truck was driven by his employee Kennedy. According to the testimony of Kennedy, witness for defendant, the house was 12 feet wide loaded on timbers placed crosswise upon the truck, the house being chained to the timbers. According to Kennedy these timbers projected only about 3 inches beyond the side of the house. Witnesses for plaintiff testified the timbers projected 2 to 2½ feet. According to plaintiff's witnesses the house had no lights upon same.

According to Kennedy he had a lantern hung on the front end of the house and red flags on the front and back ends of the house. The flags, of course, in the dark, afforded no warning, and a lantern hung upon the front afforded but little, if any, warning of the width of the house and presence of the projecting timbers upon which the house rested. The truck had the usual headlights and a tail-light placed upon the back of the cab.

Upon findings by the jury judgment was rendered in plaintiff's favor for $25,000. Statement of the findings is not necessary to a proper understanding of the questions presented.

The first, second, and third propositions complain of the overruling of objections by defendant to questions propounded by plaintiff upon cross-examination of the defendant's witness Kennedy, and the answer of the witness. Bill No. 8, relating to this matter discloses:

"'Did you run into another man that night?' To which question the defendants objected on the ground that said testimony was immaterial and irrelevant, hearsay, and prejudicial to the rights of the defendants and had no bearing on the case at bar and was an inquiry about and seeking to elicit testimony relative to an accident long after the accident involved in the case at bar.

"Which said objections were by the court overruled and the witness permitted to answer that he had another collision later that night about two or three hours after the accident in which the plaintiff was injured, and which was involved in this law suit."

Bill No. 9 discloses:

"While T. L. Kennedy, a witness for the defendants, was being cross examined by the plaintiff's counsel and after he had testified some two or three hours after the collision involved in this lawsuit, he had another collision on the same night and had a conversation with a man in an open car relative to said subsequent collision, the following question was asked the said witness by plaintiff's counsel:

"'Didn't he, the second man, protest you driving down the road with that load you had on there, telling you he thought it was dangerous and liable to kill somebody? Didn't you reply to him to go to hell, you were going on down the road with your load?'

"To which question the defendants then and there objected on the ground that said testimony was immaterial and irrelevant and was seeking to elicit the details of a collision not involved in the case at bar and was seeking to elicit testimony relative to a collision which happened some two or three hours after the collision in which the plaintiff was injured and such testimony was, therefore, highly prejudicial and inflammatory to the rights of the defendants before the jury, and because said conversation was in no wise binding upon the defendants in this case it not being a part of the res gestæ, highly prejudicial and inflammatory to the rights of the defendants before the jury, and was hearsay.

"Which said objections were by the court overruled and said witness permitted to answer:

"'Yes, he said it was dangerous.'"

The statement of facts discloses: "Yes, I had another collision that night. As to stopping and having a conversation with that man; yes, stopped. That man was in an open

car. I had a conversation with him. As to him protesting against me driving down the road with that load I had on there, telling me he thought it was dangerous and liable to kill somebody; yes, he said it was dangerous. No, sir, I didn't tell that man to go to hell, that it was none of his business, or substantially words to that effect, and that I was going down the road with my load. In reference to the accident with Mr. Nees, this other accident with the other man occurred this side of Wickett. As to the second accident being after this one with Nees; it wasn't exactly an accident; no timbers didn't hit him. The small board the light had been hanging on. * * * No, it wasn't the timber that hit him. I am positive of that. It must have been eleven o'clock when this latter accident happened."

■■ We think the questions were proper as laying the predicate for impeachment of the witness. If so, the objection was properly overruled, and if the defendant desired the testimony limited to the purpose of impeachment it should have requested the court to so limit it, which was not done. Shumard v. Johnson, 66 Tex. 70, 17 S. W. 398; Blum, etc. v. Moore-Seaver G. Co. (Tex. Com. App.) 277 S. W. 78.

■ We are further of the opinion that evidence of the second accident was competent upon the issue of negligence in the operation of the truck upon the highway. The second accident occurred upon the same highway, the same night, and under exactly the same circumstances. It was therefore independent, relevant evidence, admissible for the purpose of establishing the physical facts under which the truck was being operated, and the danger incident to its operation under the circumstances. 22 C. J. 753; Galveston, H. & S. A. Ry. Co. v. Ford (Tex. Civ. App.) 46 S. W. 77; Missouri, K. & T. Ry. Co. v. Bell (Tex. Civ. App.) 93 S. W. 198.

■ Again, the rule is that the improper admission of evidence is not ground for reversal, where it can be safely said that without such testimony the result of the trial would have been the same. See numerous cases to that effect cited in 1 Michie Digest, 795. In such cases the error is regarded as harmless.

■■ Viewing the evidence in this case upon the issue of negligence in its aspect most favorable to the defendant, it discloses the operation of the truck at night upon a main highway with a pavement 16 feet wide and narrow earth shoulders upon either side. Upon this truck was loaded a house at least 12 feet wide resting upon cross timbers which protruded at least 3 inches on each side. It is a matter of common knowledge that at night the headlights of an automobile throw into obscurity and darkness objects immediately to the rear. The side of the house had flags, but that at night afforded no warning.

■ The admitted physical facts lead to the irresistible conclusion that this truck and its load that night was a moving death trap fraught with danger to every passing car upon that highway, especially those coming from the opposite direction. When it is considered that it was dark, the pavement but 16 feet wide, that the house and timbers upon which it rested were at least 12½ feet wide, that the side of the house and ends of the timbers had no lights attached, we think the conclusion irresistibly follows that it was a highly dangerous agency and its operation at the time upon the highway negligence. We incline to the opinion the trial court would have been authorized in so charging as a matter of law. Certainly we think it can be safely said no fair-minded jury would have acquitted the defendant of negligence in so operating the truck. For this reason we hold that the evidence, if incompetent, its admission was nevertheless a harmless error.

Other propositions complain of alleged improper argument by counsel for plaintiff in addressing the jury. We regard most of the argument complained of as proper and legitimate and calling for no discussion by us.

■ Defendant pleaded contributory negligence and concluded his allegations thereof as follows: "Wherefore defendant says the plaintiff by reason of the foregoing was guilty of contributory negligence which precludes a recovery herein by the plaintiff, all of which defendant stands ready to verify."

In arguing the issue of contributory negligence counsel read this excerpt from the answer and in effect told the jury, if they found plaintiff guilty of contributory negligence, it would, as defendant said, bar his recovery.

We do not see how defendant can complain of counsel informing the jury what defendant by its own pleading had informed them.

Plaintiff was an employee of a subscriber under the Workmen's Compensation Act (Rev. St. 1925, §§ 8306–8309, as amended), the insurance carrier being the Hartford Accident & Indemnity Company, which had paid plaintiff the sum of $3,773 in full compensation of his claim under the act.

■ Plaintiff assigned to said company an interest pro tanto in any judgment he might obtain against the defendant by reason of his injuries. These facts developed upon the trial whereupon defendant filed a plea in abatement because of the nonjoinder in the suit of said company.

By bill of exception it is shown the plea was overruled and error is assigned to such ruling.

District Court Rule 53 provides: "There shall be no bills of exception taken to the

judgments of the court, rendered upon those matters, which, at common law, constitute the record proper in the case, as the citation," etc.

District Court Rule 65 provides: "Judgments rendered upon questions raised upon citations, pleadings and all other proceedings, constituting the record proper as known at common law, must be entered at the date of each term when pronounced."

· The judgment of the court upon the plea in abatement constituted a part of the record proper in this case, and must be preserved by entry upon the minutes. It cannot be brought before this court for review by bill of exception. Hall v. Williams & Ellis (Tex. Civ. App.) 267 S. W. 520; First Nat. Bank v. Herrell (Tex. Civ. App.) 190 S. W. 797; 3 Tex. Jur. § 414 and cases cited.

Upon the same theory the courts have repeatedly refused to review rulings upon special exceptions where the ruling was shown only by bill of exception. Some of the cases so holding are as follows: Daniel v. Daniel (Tex. Civ. App.) 128 S. W. 469; Withers v. Crenshaw (Tex. Civ. App.) 155 S. W. 1189; Ilseng v. Carter (Tex. Civ. App.) 158 S. W. 1163; King-Collie Co. v. Wichita Falls, etc. (Tex. Civ. App.) 205 S. W. 748, and cases there cited. Wichita Falls, R. & F. W. Ry. Co. v. Mendoza (Tex. Civ. App.) 240 S. W. 570; Gardner v. Goodner, etc., Co. (Tex. Civ. App.) 247 S. W. 291; Finklea v. Bank (Tex. Civ. App.) 247 S. W. 320; Simmons v. Simmons (Tex. Civ. App.) 256 S. W. 314, and cases cited. Willis v. Graf (Tex. Civ. App.) 257 S. W. 664; Meadows & Co. v. Turner (Tex. Civ. App.) 270 S. W. 899; Cohen v. Hill (Tex. Civ. App.) 286 S. W. 661.

But if the ruling of the court upon the plea in abatement was considered upon its merits, we would sustain the ruling, because article 8307, § 6a, R. S., expressly authorizes this suit to be brought in the name of the plaintiff, Nees.

The only remaining question is that asserting the verdict and judgment is excessive. The evidence discloses the plaintiff lost his arm, suffered severe loss of blood and shock, and, by reason of extreme weakness following the injury, an eye became infected and ulcerated while in the hospital. As a result he lost the sight of the eye. He continues to suffer pain in the injured arm, a condition which frequently occurs in amputations; a pain being present as if the missing limb were still attached to the body. The plaintiff is nervous and his earning capacity greatly impaired. He is an oil well driller, in which pursuit he can no longer engage. While there has been a heavy award of damages in this case, we are not prepared, in the light of the evidence, to hold it excessive.

Affirmed.