## HOLT v. WILSON.

### No. 1284.

Court of Civil Appeals of Texas. Waco.
Dec. 15, 1932.

R. B. Cross, of Gatesville, for appellant.

T. R. Mears, of Gatesville, for appellee.

GALLAGHER, C. J.

Appellant, P. D. Holt, is the editor, publisher, and owner of a newspaper called the Gatesville Messenger. Appellant, in September and October, 1931, instituted and caused to be conducted what is known as a circulation campaign, which was under the management of Mr. S. Clark Fulks. Certain prizes were offered to canvassers participating in said campaign. The first prize was an automobile and the second a trip to California, or, at the election of the winner, $200 in cash. Other prizes of less value were offered, but consideration of the same is not relevant to the issues involved in this case. Canvassers were invited to contest for said prizes, and the same were to be awarded according to the number of credits or votes earned by them respectively. Each cash subscription secured and paid over to the management carried with it a certain number of credits or votes. The campaign was divided into three periods. The first period lasted three and a half weeks, the second period two weeks, and the third or last period only one week. Each period ended with a calendar week. Subscriptions taken and credits or votes based thereon had greater value during the first period than the second, and during the second period than the third. During the first and second periods all subscriptions were paid direct to Mr. Fulks and credits or votes based thereon awarded to the respective contestants. During the last period all reports of subscriptions received by the several contestants and their claim for credits or votes accruing by reason thereof were required to be deposited by each respective contestant in a sealed ballot box at a local bank. The declared purpose of such provision was that no one, not even Mr. Fulks, should know the actual credits or votes earned by each of the several contestants during said last period. A number of prominent citizens were appointed to act as an advisory board, the declared function of which was to decide any question of sufficient importance to be referred thereto. A committee from such board was to act in canvassing the credits or votes and awarding prizes.

The management of the campaign published in an issue of the paper dated October 8, 1931, an article apparently designed to inspire greater effort on the part of the several contestants. The provisions of said article material to the issues involved in this case were a request that all contestants should submit their respective reports at the office of the paper by 12 o'clock midnight Saturday, October 10, 1931, and an affirmative statement that the "second period" would close at midnight on said day, and that after such close no more reports would be accepted by the manage-

ment, but should be placed in said sealed ballot box. All the several contestants acted on said notice and reported subscriptions secured during said period, and claimed the credits or votes promised therefor. All said reports except one made for Mrs. Johnson by her husband, Mr. Francis Johnson, were shown to have been presented to the campaign manager, Mr. Fulks, at the office of the paper before 12 o'clock midnight upon that date. The testimony with reference to the exact time Mr. Johnson tendered to Mr. Fulks said report for his wife at said office was conflicting. Appellant contended that said report, though actually received and the credits or votes based thereon awarded to Mrs. Johnson after midnight, was tendered to Mr. Fulks by Mr. Johnson before midnight, and received and audited later, because he, said Fulks, was then actually engaged until after midnight in receiving and auditing reports of other contestants and awarding credits or votes thereon. Appellee contended that Mr. Johnson never tendered said report at said office until after midnight, and that the subscriptions then reported should have been awarded only the decreased credits or votes that they would have been entitled to had they been deposited in said sealed ballot box. It is apparently conceded that the third or last period ended at 4 o'clock p. m. Saturday, October 17, 1931. At that time the management furnished to a committee from the advisory board a list of the several contestants and the number of credits or votes which had been awarded to each of them for reports submitted prior to the third or last period. Said committee then opened said sealed ballot box, audited the reports contained therein, and awarded proper credits or votes to the several contestants. The credits or votes so awarded were then added to the list furnished by the management. On the basis of such totals, Mrs. Johnson had the highest number of credits or votes and appellee, Miss Elsie Wilson, the next highest. The committee thereupon awarded the automobile to Mrs. Johnson, and a trip to California, or $200 in money, as desired, to appellee. The testimony does not show whether an automobile had been selected and purchased by appellant as first prize prior to the award or not, but it is conceded that an automobile of the kind and quality promised was ·by the management delivered or caused to be delivered to Mrs. Johnson. Appellee, claiming that she was entitled to the first prize, refused to accept the second prize, and demanded that appellant deliver to her an automobile of the kind and quality promised, which demand was refused.

Appellee thereafter filed this suit against appellant for the sum of $717, which she alleged was the value of the automobile promised as the first prize in said contest. She based her claim that she had won the first prize on her contention that the report of subscriptions taken by Mrs. Johnson during the second period was not tendered to Mr. Fulks until after midnight on October 10, 1931; that under the rule announced and published two days before Mr. Fulks had no right to receive the same; that his action in doing so was wrongful and collusive; and that the subscriptions embraced in said report should have been placed in the sealed ballot box and awarded the lesser number of credits or votes allowed for subscriptions found in said box at the end of the third or last period. She alleged in that connection that, had this been done, she, appellee, would have had at the close of the campaign a larger number of credits or votes than Mrs. Johnson, and would have therefore won the first prize, and would have been entitled to said automobile. Such further recitals of pleadings and facts as may be necessary to a full understanding of the issues of law hereinafter discussed will be made in connection therewith.

The case was tried to a jury. It was admitted that the report filed by Mrs. Johnson about midnight on October 10, 1931, embraced twenty-three five-year subscriptions. The undisputed testimony showed that said report was received and credits or votes awarded thereon to Mrs. Johnson at the rate allowed for such subscriptions during the second period; that, had credits or votes been allowed to her thereon only at the rate for the third or last period, appellee and not Mrs. Johnson would have had the greatest number of credits or votes of all the contestants, and would, under the terms of such contest, have been entitled to the first prize. Appellant, at the close of the testimony, moved for an instructed verdict, which was refused. The court submitted to the jury for determination a single issue, which issue and the answer thereto were as follows: "Do you find that Francis Johnson, husband of Mrs. Eleanor Johnson, appeared at The Messenger office with twenty-three five year subscriptions and offered to report the same to the campaign manager on or before twelve o'clock P. M., October 10, 1931?" Answer: "No."

Neither party objected to such submission or requested the submission of any other issues or charges. The pleadings of the parties and the undisputed testimony showed that each contestant was paid a certain percentage of the amount of cash collected for subscriptions, and that contestants winning prizes were required to return the same or account therefor at the delivery of the prizes won. The testimony further showed without contradiction that the value of the automobile promised as first prize was $717, and that the total commissions received by appellee amounted in the aggregate to $74.42. The court deducted the same from the value of the automobile, and rendered judgment against appellant in favor of appellee for the remainder, $642.58, from which judgment appellant has perfected this appeal.

## Opinion.

■ Appellant presents an assignment of error in which he complains of the action of the court in overruling a plea of abatement interposed by him. He alleged in said plea that only one automobile was promised by appellant, and that, the same having been awarded to Mrs. Johnson and delivered to her, she was a necessary party to the suit. The action of the court on said plea and appellant's exception thereto are preserved and presented by bill of exceptions only. In the absence of an order thereon entered of record, we are without authority to review the action of the court in the premises. Jenkins v. Jenkins (Tex. Civ. App.) 50 S.W.(2d) 341, 342, par. 2; First Nat. Bank v. Herrell (Tex. Civ. App.) 190 S. W. 797, 798, par. 3; Seastrunk v. Kidd (Tex. Civ. App.) 53 S.W.(2d) 678, 680 (first column). However, we are of the opinion no error is shown by said bill. Appellant admittedly delivered said automobile to Mrs. Johnson. Appellee, if in fact entitled thereto, was not required to pursue the same, but had a right to treat such delivery as a breach of contract by appellant and sue for the value thereof. Crim v. Lukenbill (Tex. Civ. App.) 21 S.W.(2d) 83, 85, par. 3. In the cases cited by appellant, the right or title to the property, as distinguished from a recovery of its value, was in issue. Had appellant deemed Mr. and Mrs. Johnson proper parties to the suit, he could have himself impleaded them. Labor Bank & Trust Co. v. Adams (Tex. Civ. App.) 23 S.W.(2d) 814, 815, par. 3. He had ample time to do so. Appellee's petition was filed October 22, 1931. The term of court at which trial was had did not convene until the 11th day of January, 1932.

■■ Appellant assailed appellee's petition by general and special exceptions, all of which were duly overruled and the action of the court thereon entered of record. Such action is presented as ground for reversal. The first contention advanced is that appellee did not specifically allege that Mrs. Johnson accepted the terms of the published offer to contestants, acted thereunder, and was bound thereby. In determining the sufficiency of a petition, even on general demurrer, the same must be read in the light of the allegations of the party assailing the same. Clem Lumber Co. v. Elliott Lumber Co. (Tex. Com. App.) 254 S. W. 935, 936, par. 1, and authorities there cited. Appellant alleged affirmatively that Mrs. Johnson was a contestant, and that she did in fact comply with the requirements of the published notice of October 8, 1931, hereinbefore recited. Appellant's second contention is that the notice published October 8th, declaring that the second period would end at midnight on October 10th, and that no reports would be received by the management after that time, constituted a material change in the original plan of the contest, and that appellee's petition was insufficient because it

failed to allege that the several contestants acted thereunder or became in any way bound thereby. The pleadings of the parties hereto, considered together, did allege, in substance at least, that both Mrs. Johnson and appellee attempted to conform, and did conform, to the requirements of said notice. However, since the second period admittedly embraced the two weeks ending October 10th, and since the calendar week, in the absence of some specific stipulation, necessarily ended at midnight Saturday, we are unable to see that said published notice materially varied the terms of the contract. Appellant's third contention is that, since appellee in effect admitted in her petition that the twenty-three five-year subscriptions secured by Mrs. Johnson and reported as aforesaid were in fact secured during the second period of the campaign, appellee, in order to state a cause of action, should have further alleged affirmatively that, if any contestant failed to report by midnight on October 10th, such failure would forfeit the right to have his or her credits counted in the second period at the rate allowed therefor during such time. There was attached to the pleadings of one or both of the parties all the rules and regulations promulgated for the government of the contest, including a copy of the notice published October 8, 1931. The original rules promulgated by appellant for the government of said contest provided that during the entire last period all final collections and reserve credits should be deposited in the sealed ballot box above referred to, and the number of credits or votes awarded upon such subscriptions and collections should be according to the schedule of credits or votes allowed for such period. There was no intimation in such original rules that a contestant might at his or her option withhold the report of subscriptions taken during the second period and afterwards deliver them direct to the campaign manager, Mr. Fulks, and receive credit therefor. Such action would have defeated the declared purpose of the sealed ballot box, which was that no one, not even Mr. Fulks, should know the strength of the various contestants after the close of the second period. Such action was, however, expressly prohibited by the notice of October 8th. Said notice stated specifically that, after midnight October 10th, no reports would be received by the campaign manager from any contestant. No other course, according to the terms of said notice, was left to contestants failing to report before midnight on October 10th except to deposit their respective reports and collections in such sealed ballot box and to receive credits according to the schedule allowed for said third period. We do not think appellee was required to allege in terms that a contestant failing to comply with said notice forfeited the right to have his or her votes counted at the rate allowed for the second period. Appellee's pleadings charged clearly that Mr. Fulks received the report of sub-

scriptions secured by Mrs. Johnson after midnight on October 10th, and in doing so violated the terms of the published notice of October 8th, to appellee's prejudice.

■ Appellant presents an assignment of error in which he asserts that the court erred in refusing his request for an instructed verdict. He contends thereunder that the rules of the contest as hereinbefore recited, given a fair and reasonable construction, would allow all subscriptions actually secured during the second period to be reported and credits thereon awarded at the rate promised for such period, regardless of when the same were reported. The rules and requirements of the contest were in writing or in print, and couched in language chosen by appellant, or by his representative, Mr. Fulks. When appellee acted thereon by entering the contest and complying with the prescribed requirements, a contract arose between her and appellant, which was in legal effect a written one. The construction of an unambiguous written contract is for the court. Shepherd v. White, 11 Tex. 346, 358; Cook v. Dennis, 61 Tex. 246, 249; San Antonio Machine & Supply Co. v. Allen (Tex. Com. App.) 284 S. W. 542, 543, par. 2. A written contract must be construed according to its terms where no mistake in the agreement as written is pleaded. Collier v. Robinson, 61 Tex. Civ. App. 164, 129 S. W. 389, 391, second column (writ refused); Brotherhood of Locomotive Firemen and Enginemen v. Williams (Tex. Civ. App.) 291 S. W. 301, 304, pars. 4 and 5, affirmed (Com. App.) 298 S. W. 535. A contract must of course be construed most strongly against the party thereto who selected the language used and tendered it to the opposite party to be accepted or rejected as he might see fit. Pledger v. Business Men's Accident Ass'n of Texas (Tex. Com. App.) 228 S. W. 110, 113, par. 2. The published notice of October 8th stated specifically that the second period would close at midnight on October 10th and that after such close no more reports would be accepted by the management, but all such reports must be placed in the sealed ballot box. The construction contended for by appellant is excluded by the very language of such notice.

■ Appellant further contends under said assignment that, even if Mrs. Johnson's report was in fact tendered for the first time after midnight on October 10th, since such tender was within fifteen or twenty minutes thereafter, the same constituted a substantial compliance with the requirements of said notice. Time may be of the very essence of a contract, and we think it was made so by the express provisions of said notice. Garrison v. Cooke, 96 Tex. 228, 231 et seq., 72 S. W. 54, 61 L. R. A. 342, 97 Am. St. Rep. 906; Upham v. Gamble (Tex. Civ. App.) 44 S.W.(2d) 1011, 1013, par. 2; Bes Line Construction Co. v. Woods, 37 Tex. Civ. App. 414, 84 S. W. 378, 379

et seq. (writ refused); City of Houston v. Kapner, 43 Tex. Civ. App. 507, 95 S. W. 1103, 1106; Barber Asphalt Paving Co. v. Loughlin, 44 Tex. Civ. App. 580, 98 S. W. 948, 949; Palo Pinto County v. Beene (Tex. Civ. App.) 199 S. W. 866, 867, par. 1; Dayvault & Newsome v. Townsend (Tex. Civ. App.) 244 S. W. 1108, 1110, par. 1. Actual, and not substantial, compliance was required of Mrs. Johnson.

■ Appellant further contends under said assignment that the action of Mr. Fulks in accepting Mrs. Johnson's report and awarding full credits thereon after midnight on October 10th, if he did do so, was the exercise of power and discretion reserved in the rules originally promulgated, which provided that, should any question arise, the decision of the management would be absolute and final, and that canvassers entering the contest should agree to abide by such provision. The rules did contain said provision, and appellee testified she had agreed to abide thereby. The effect of the provision so quoted was to attempt to invest appellant, acting through his agent or representative, Mr. Fulks, who conducted the campaign, with final and conclusive authority to determine all questions, both of fact and law, which might arise during the progress of the contest, and to deny contestants access to the courts to establish and enforce their rights. Such provision was therefore invalid, and cannot be interposed in bar of appellee's demands. Long v. Chronicle Publishing Co., 68 Cal. App. 171, 228 P. 873, 876, par. 8; Dozier v. City of Gatesville (Tex. Civ. App.) 4 S. W.(2d) 131, 133, par. 2, and authorities there cited.

■ Appellant assails the sufficiency of the evidence to support the finding of the jury on the issue submitted. Appellant's manager Fulks testified that Mr. Johnson presented his wife's report in person at the office of the paper, as required by the terms of said published notice, ten or fifteen minutes before midnight on October 10th. He was corroborated on this point by the testimony of his wife and Mr. Johnson. It cannot be said that any of said witnesses were wholly disinterested in the controversy. Appellee testified that she arrived at the office of the paper about 11:30 that night; that she finished making her report about 11:45; that she did not know whether Mr. Johnson appeared in person and tendered his wife's report after she left or not. Miss Bond testified that she arrived at the office about 11:30 and made her report immediately after appellee had reported. There was testimony that said witness was making her report when the clock struck 12. She did not see Mr. Johnson there that night. Clarence Howell testified that he entered the office of the paper about three minutes to 12; that he followed Miss Bond in making his report; that he left about ten or twelve minutes after 12 o'clock; and that he did not see Mr. Johnson there. W. T. Howell, a brother of

Clarence Howell, testified that he was in front of or in the office from about ten minutes to 12 until his brother finished making his report, and that he did not see Johnson there. Mrs. Osborn testified she sat in a car near the front door of the office from ten minutes to 12 until after her son, Clarence Howell, had finished his report, and that Johnson did not enter the office during that time. The testimony introduced by appellee therefore covered the entire time from 11:30 until ten or twelve minutes after midnight, and negatived the presence of Mr. Johnson in the office of the paper during such time. Appellee's witness Howell testified that he entered a protest to the action of Mr. Fulks in accepting Mrs. Johnson's report after midnight, and that Fulks did not then claim that it had been tendered before midnight, but represented that it only embraced two or three subscriptions, and could not affect the final result. It was peculiarly within the province of the jury to pass upon the credibility of the witnesses, determine the weight to be given to their testimony, and solve conflicts therein. The rule for determining whether the court erred in refusing to set aside a finding for lack of sufficient support in the evidence is that, in passing upon such contention, the court must consider the evidence in the aspect most favorable to such finding. Eastham v. Hunter, 98 Tex. 560, 565, 86 S. W. 323; Williams & Chastain v. Laird (Tex. Civ. App.) 32 S.W.(2d) 502, 505, par. 1 (writ refused) and authorities there cited; Stone v. City of Wylie (Tex. Com. App.) 34 S.W.(2d) 842, 845, par. 6, and authorities there cited. We cannot say that the finding of the jury was without sufficient support in the evidence.

We have considered all the other assignments presented by appellant as ground for reversal, and have reached the conclusion that none of them require or justify such action. The judgment of the trial court is therefore affirmed.