## WEBSTER et al. v. ISBELL et al.
### No. 9927.

Court of Civil Appeals of Texas. Galveston.
March 16, 1934.

Rehearing Denied May 2, 1934.

Boyles, Scott & Fahey, Frank G. Dyer, and Abe W. Wagner, all of Houston, for appellants.

Earle M. Manint and Jno. T. Garrison, both of Houston, for appellees.

LANE, Justice:

Mrs. Viola Isbell, wife of H. M. Isbell, was on the 9th day of April, 1930, employed by the Southwestern Bell Telephone Company at its office or exchange in the city of Houston, Tex., as an operator; her day's work ending at 12 o'clock p. m. As a part of the compensation paid to her by her employer, it furnished her transportation from its office and exchange to her home, and to do so, said employer had contracted with one Bruce Webster and Dixie Cab Company to furnish such transportation service. In accordance with said contract, a taxicab belonging to Bruce Webster and Dixie Cab Company in charge of a driver in the employ of said owners called for Viola Isbell on or about the

9th day of April, 1930, by reason of the above-mentioned contract, whereupon she entered said taxicab for the purpose of being carried to her home. When the taxicab reached her home, it was momentarily stopped, but while she (Viola Isbell) was in the act of leaving the taxicab, and before she was able to reach the ground, the driver of the taxicab started the same, and she by reason of such sudden starting was thrown to the ground and suffered certain injuries.

At the time of such injuries, Viola Isbell, as before stated, was in the employ of the Southwestern Bell Telephone Company, a "Subscriber," as that term is used in the Workmen's Compensation Act of the state of Texas, which at such time held a policy of insurance issued to it by the Texas Compensation Insurance Company, under the terms and conditions prescribed by the Compensation Act (Vernon's Ann. Civ. St. art. 8306 et seq.). Due and timely notice was given of said injuries, and on the 26th day of April, 1930, Viola Isbell gave written notice of such injuries to the Industrial Accident Board of Texas, which notice was signed by H. M. Isbell, husband of Viola Isbell, as a witness. At the time Viola Isbell suffered her injuries the Dixie Taxicab Company and Bruce Webster were engaged in the business or occupation of transporting passengers for hire in the city of Houston, Tex., under a permit issued by said city, and in accordance with the ordinances and regulations governing operations of vehicles. As a prerequisite to their right to so operate it, they were required to procure a policy of insurance or indemnity, and they did procure such policy, issued by the American Fidelity & Casualty Company. By the terms of such policy it was made for the benefit of any person claiming injury by reason of the negligent operation of certain described cabs by the Dixie Taxicab Company and Bruce Webster, as well as for the benefit of said taxicab company and Webster. The insurance policy issued by the American Fidelity & Casualty Company was for the sum of $2,500.

After Mrs. Viola Isbell had filed her claim with the Industrial Accident Board, and pending an award by said board, a settlement was agreed upon between the claimant and the Texas Insurance Company, who had issued its policy to the telephone company under the terms of the Workmen's Compensation Act, whereby said insurance company agreed to pay to Mrs. Viola Isbell the sum of $600 in full settlement of its liability by reason of its policy. Such agreed settlement was on the 18th day of February, 1931, submitted to and approved by the Accident Board. The said sum of $600 was paid as agreed upon.

On the 28th day of May, 1931, Mrs. Viola Isbell and the Texas Compensation Insurance Company brought this suit against Bruce Webster, doing business under the trade-name of Dixie Cab Company, Dixie Cab Company, and the American Fidelity & Casualty Company. Plaintiffs substantially alleged in their petition all the facts stated in our preliminary statement, pertinent to the issues raised between the parties to the suit.

They further alleged that Mrs. Viola Isbell "is not joined in this suit by her husband, H. M. Isbell, for the reason that H. M. Isbell has abandoned and deserted her and that his present whereabouts are unknown to said plaintiff (Viola Isbell) and for such reason she prosecutes this suit in her own name."

It is alleged that Mrs. Isbell suffered her injuries by reason of the negligence of the driver of the cab of Bruce Webster, specifically stating the acts constituting such alleged negligence.

It is alleged that the injuries received by Mrs. Isbell were serious and permanent, and will continue during her natural life; that for relief she will be compelled to submit to a major operation which will cause her to suffer great pain, and incur much cost and expense; that her health has, by reason of such injuries, been greatly impaired, and that her nervous system has thereby been seriously and permanently impaired, all to her great damage.

It is alleged that at the time of her injuries she was receiving a salary of $75 per month for her services; it is further alleged that, since she received such injuries, Mrs. Isbell has not been able to perform any character of work, similar to work in which she was engaged at the time she was injured, and that she will not be able to do such work in the future on account of such injuries, all to her damage in the sum of $10,000; that on account of the physical and mental pain and suffering she has endured since said injuries, and as a result thereof, and which she will continue to suffer in the future, she has been further damaged in the sum of $5,000; that she has been advised by her physicians that the only relief she may hope to receive in the future will result from a major operation on her coccyx, which operation will cause her further mental and physical pain and suffering and will force her to incur large doctors', hospital, nurses', and medical bills, to her further damage in the sum of $5,000.

Plaintiffs prayed a recovery in favor of Mrs. Viola Isbell against Bruce Webster and Dixie Cab Company a sum of $20,000, and against the American Fidelity & Casualty Company a sum of $2,500, same to be credited on such judgment as may be awarded to her against Bruce Webster, and that, out of any sum awarded to her, the plaintiff Texas Compensation Insurance Company be awarded the sum of $1,599.33 or such amount as the court may find it is entitled to under the pleading and evidence.

All defendants answered, first, by general demurrer; second, by a plea in abatement, saying that the petition of plaintiffs shows on its face that Mrs. Isbell is a married woman, and that by her suit she is seeking to recover damages which are community property of herself and her husband, H. M. Isbell, who is not a party to this suit, and therefore plaintiff Viola Isbell has no authority to bring this suit. They specially excepted to the allegations of the Texas Compensation Insurance Company that the telephone company, the employer of Mrs. Isbell, carried a policy of compensation insurance with the Texas Compensation Insurance Company, and that by reason of Mrs. Isbell's injuries it was compelled to pay Mrs. Isbell the sum of $600, and that it is entitled to be subrogated to the cause of action of Mrs. Isbell to the extent of the sum which it paid to Mrs. Isbell, in that it appears from the plaintiff's petition that, at the time Mrs. Isbell received her injuries, she was the lawful wife of H. M. Isbell, and he alone was authorized to prosecute this suit, and it is not shown that the Texas Compensation Insurance Company ever paid H. M. Isbell any sum on account of such injuries, and to the allegations of said company seeking recovery against defendants for sums paid by said company to Mrs. Isbell, in that it does not appear from such allegation that the Industrial Accident Board ever approved the settlement had between Mrs. Isbell and the Texas Compensation Insurance Company, and for this reason said settlement was void and said company was not entitled to be subrogated to the claim of Mrs. Isbell or her husband; that, if H. M. Isbell ever had any cause of action against defendants, the same arose on the 10th day of April, 1930, and that it is apparent from the facts alleged in plaintiffs' petition it is barred by the two-year statute of limitation (Rev. St. 1925, art. 5526).

Defendants also generally denied all the allegations of the plaintiff's petition, and in a separate instrument filed May 31, 1932, reiterated their plea in abatement.

By supplemental petition the plaintiffs, answering defendants' plea of limitation, say that immediately after the accident complained of occurred Mr. and Mrs. Isbell lived together, and that they continued to so live for about three months from the time of the accident, at which time Mr. Isbell told Mrs. Isbell to return to her parents, and that she did so and continued to live with her parents; that she did not hear from her husband again until on or about the 4th day of April, 1932, a period of about two years; that at the time Mrs. Isbell filed this suit, on May 28, 1931, she was unable to get in contact with her husband or to ascertain his whereabouts; that she was, long after this suit was filed, informed that her husband, H. M. Isbell, was living in California. They denied generally all the allegations of the defendants' answer.

On May 31, 1932, H. M. Isbell intervened in the suit and adopted, as his own, the allegations in the petition of Mrs. Isbell.

On said 31st day of May, 1932, the cause was tried before a jury upon special issues, in answer to which they found that H. M. Isbell had not, at the time of and prior to the filing of this suit, abandoned and refused to support Mrs. Isbell; that Mrs. Viola Isbell was injured as alleged through and by reason of the negligence as alleged.

The jury also found that the sum of $15,000, if paid in cash, would fairly and adequately compensate the Isbells, (1) for the injuries alleged and proven to have been received by Mrs. Isbell, taking into consideration mental anguish and physical suffering by her as a direct result of her injuries, down to the date of the trial; (2) for loss of time by Mrs. Isbell from her work, as a direct result of the injuries received by her, from the date thereof down to the date of trial of the cause; and (3) the reasonable cash value of such sum or sums as she will in reasonable probability lose in the future and beyond the date of trial, because of her diminished capacity to labor and perform work, as a direct result of the injuries received by her.

Upon the verdict of the jury, the trial court rendered judgment wherein it is recited as follows:

"It is therefore, considered, ordered, adjudged and decreed by the Court that the plaintiffs, Mrs. Viola S. Isbell and husband, H. M. Isbell, do have and recover of and from the defendants Dixie Cab Company, Bruce Webster, doing business under the name of the Dixie Cab Company the sum

of Fifteen Thousand Dollars, with interest thereon from this date at the rate of six per cent per annum.

"And it further appearing from the evidence in this case that the defendant, American Fidelity & Casualty Company, carried a policy of insurance in favor of the plaintiffs in the sum of Two Thousand, Five Hundred Dollars, $2,500.00), issued to Dixie Cab Company or Bruce Webster doing business under the name of Dixie Cab Company, indemnifying said Dixie Cab Company or Bruce Webster against loss on account of personal injury to the plaintiff in said sum, it is therefore, ordered, adjudged and decreed that the plaintiffs, Mrs. Viola S. Isbell and H. M. Isbell, do have and recover of and from said defendant, American Fidelity & Casualty Company the sum of Twenty Five Hundred Dollars, ($2500.00), said sum when collected to be applied as a credit on said judgment for the sum of Fifteen Thousand Dollars, ($15,000.00) herein awarded to plaintiffs against the defendants Dixie Cab Company and Bruce Webster, doing business as the Dixie Cab Company, for all of which execution may issue.

"It is further ordered, adjudged and decreed that the plaintiff, Texas Compensation Insurance Company be awarded the sum of Six Hundred Dollars, ($600.00) out of the Judgment herein rendered in favor of the Plaintiff, Mrs. Viola S. Isbell."

All defendants have appealed from the judgment rendered.

▮ Appellants in effect insist that the court erred in overruling their general demurrer and plea in abatement to the plaintiffs' petition and suit.

We overrule such contention. We think the matters and things alleged in plaintiffs' petition state a cause of action maintainable by Mrs. Viola Isbell, without the joinder of her husband. If appellants' plea in abatement was ever presented to the court for a ruling thereon, such fact is not shown by any order entered of record. Having failed to evoke a ruling upon such plea, appellants waived the same. It is true that appellants have filed a bill of exception complaining of the action of the court in overruling their plea in abatement to the plaintiff's petition, but such exception is not sufficient to bring the ruling complained of before this court for review. Judgment of the trial court on the plea in abatement constituted part of the record proper, which must be preserved by entry on minutes of the court and could not be brought before this court for review by bill

of exception. Epting v. Nees (Tex. Civ. App.) 25 S.W.(2d) 717; 3 Texas Jurisprudence, § 404, p. 575; Hudgins v. T. B. Meek Co. (Tex. Civ. App.) 1 S.W.(2d) 681; Luginbyhl v. Thompson (Tex. Civ. App.) 11 S.W.(2d) 380; Holt v. Wilson (Tex. Civ. App.) 55 S.W.(2d) 580, 583; Johnson v. Sunset Store (Tex. Civ. App.) 27 S.W.(2d) 646. The petition of plaintiffs on its face presents a cause of action maintainable by Mrs. Isbell. Therefore the court did not err in overruling the defendants' general demurrer, which has the effect in law to admit as true the allegations of such petition.

▮ Independent of the waiver of defendants' plea in abatement above mentioned, and notwithstanding the finding of the jury that H. M. Isbell, husband of Mrs. Viola Isbell, had not, at the time of and prior to the filing of this suit by Mrs. Isbell on May 28, 1931, abandoned and refused to support Mrs. Isbell, we are of opinion the suit brought by Mrs. Isbell was maintainable by her.

Mrs. Isbell testified that she received her injuries on the 10th day of April, 1930; that shortly thereafter she and her husband went to Jackson, Miss.; that about December 3, 1930, she went to Jacksonville, Tex., to her parents, and that her husband remained in Jackson, Miss.; that her husband told her, at the time she left him in Jackson to go to her parents, that he did not know what he was going to do; that after they separated in Jackson she heard from him by letter in February, 1931, he was at that time in Jackson, Miss., and in Mobile, Ala.; that she heard nothing more from or of him from February, 1931, to April, 1932; that at the time she filed this suit she did not know where her husband was; that she had not heard from him since February, 1931; that, although the case had been once tried prior to this trial, she had not heard from her husband since February, 1931, until April, 1932, and that at the time she filed this suit she did not know where or how to locate him. H. M. Isbell testified that from Jackson, Miss., he sent his wife to her parents in Texas; that after he left Jackson he went to California and stayed there a year and six months, and that while there he did not communicate with his wife; that so far as he knew, during such period, neither his wife nor her relations know of his whereabouts; that he went to California to leave trouble relative to checks which were signed by a Mr. Gray and which he (witness) had cashed, and which came back unpaid, and that, as he did not have the money to take care of them,

and as he thought they were after him for cashing said checks, he left Texas; that, as he thought they were after him, he stayed away and tried to conceal himself; that in or about March or April, 1932, his brother informed him that there had been no complaint filed against him; that he intended to stay away from Texas until he learned that no such complaint was filed against him; that after he got back to Texas in April, 1932, he went to see his wife in Jacksonville, Tex., and after he and his wife talked things over they decided to go back together.

The testimony of these two witnesses stands uncontradicted.

■ While the right to manage and control the community estate is by the terms of the statute to continue with the husband during the existence of the marriage relations, still it must be necessarily meant to apply only in those cases where the husband by his presence and willingness to assume such duty and trust is in a position to properly discharge the same with justice to the wife. "The authorities are numerous to the effect that, where the husband has abandoned his wife and is no longer discharging the duties incumbent upon him as manager of the connubial partnership, the rights of the wife which have hitherto been passive immediately become active, and she herself may do things which ordinarily are intrusted by law to the husband as the head of the family. This arises out of necessity of the situation, based upon the inherent right of the wife herself to her own property and a share in the community, and out of the dereliction of the husband in the discharge of the statutory duties imposed upon him as agent of the Community." Speer's Law of Marital Rights, § 112, p. 154. See authorities there cited in note.

In section 438, p. 557, Speer's Law of Marital Rights in Texas, it is said: "The wife may be a plaintiff in all suits for the recovery of her separate property; but she is not the only person authorized to bring such suit. Her husband may bring it, either by himself or jointly with her. But in the event he fails or neglects to do so, then she may bring it alone. No definite time is allowed the husband within which to bring the suit. When a cause of action has arisen in favor of the wife, and the husband fails or neglects it, then she may sue; or if he refuses for any reason." See authorities cited in note.

We gather from the authorities that, where the husband unusually prolongs his absence from contact with the wife, as in the present case, he may render it necessary for the wife for the preservation of the community property to sue alone.

■ Appellants contend for a reversal of the judgment that, since the undisputed evidence shows that any recovery which might be recoverable in the suit would belong to the community estate of Mr. and Mrs. Isbell, Mr. Isbell alone had the right to institute and prosecute such suit, and therefore the suit brought by Mrs. Isbell to recover upon the cause of action, which arose on the 10th day of April, 1930, did not stop the running of the statute of limitation, and, since it is shown that H. M. Isbell, the husband, did not join in the suit until May 31, 1932, such cause of action was barred by the two-year statute of limitation pleaded by appellants.

We overrule such contention. First, because, as already shown, we have held that Mrs. Isbell and the compensation carrier had the right to institute and prosecute this suit; second, it is shown that Mrs. Isbell gave due and timely notice of her injuries, and thereafter presented to the Industrial Accident Board of Texas, a compromise settlement agreement, between her and the Texas Compensation Insurance Company, which had issued its policy to Mrs. Isbell's employer, and that on the 18th day of February, 1931, the Industrial Accident Board approved such agreement, and that the Texas Compensation Insurance Company paid to Mrs. Isbell $600 in satisfaction of the award made under said agreed settlement.

The claim of Mrs. Isbell having been filed before the Industrial Accident Board, the running of the statute of limitation was suspended until the 18th day of February, 1931, at which time the Accident Board finally acted upon and approved the claim. On the 31st day of May, 1932, H. M. Isbell intervened in the suit filed by his wife, and thereby became a plaintiff therein. So it appears that less than two years elapsed between the time of the final action of the Industrial Accident Board on the claim filed with it by Mrs. Isbell and the time H. M. Isbell intervened in this suit.

In Fidelity Union Casualty Co. v. Texas Power & Light Co. (Tex. Civ. App.) 35 S.W.(2d) 782, one Riley was an employee of Pevito Bros., a subscriber under the Texas Workmen's Compensation Act, and the Fidelity Union Casualty Company was the carrier of their workmen's compensation insurance. Riley received injuries on the 9th day of November, 1927, while working as such employee, through the negligence of the Texas

Power & Light Company. Riley filed a claim with the Texas Industrial Accident Board in which he was by such board awarded judgment against the compensation carrier. From such award Riley protested and filed suit in the district court to have the award set aside and to recover judgment for a larger amount. The casualty company contested the suit of Riley. In such suit Riley recovered a judgment. Such judgment became final on March 22, 1930. Such judgment was paid by the casualty company, and on the 21st day of April, 1930, more than two years after the date of the injury of Riley, the casualty company instituted suit against the Texas Power & Light Company for its own benefit and for Riley. In the suit last mentioned, the Texas Power & Light Company, in its answer, alleged that more than two years had elapsed between the date of Riley's injury and the filing of said suit, and that such cause of action was barred by the two-year statute of limitation. The trial court sustained the plea of limitation and dismissed the suit.

Upon an appeal to the Court of Civil Appeals at Dallas, the court held that:

"Limitation of insurer's action against third party injuring employee runs only from entry of final judgment for employee against insurer (Rev. St. 1925, àrt. 5526, subd. 6; art. 8307, § 6a).

"Limitation of insurer's action against third party injuring employee was suspended from day employee filed claim until entry of final judgment against insurer (Rev. St. 1925, art. 5526, subd. 6; art. 8307, § 6a)." See 37 C. J. page 811, § 154.

In the case mentioned the court said: "If we be mistaken in our conclusion that the statute of limitation did not begin to run until the entry of final judgment in favor of Riley in the compensation suit, and that such limitation began to run on the date Riley received his injuries, we are nevertheless of the opinion that the same conclusion, under the facts of this case, is inevitable. Riley is forbidden, by the terms of the statute, to institute the suit as a common-law action in his favor to recover any overplus of damages he may be entitled to under the statute, until he has prosecuted his claim for compensation to a final and successful conclusion. While this legislative prohibition to enforce his rights under this statute existed, the law of limitation is suspended. Manes v. Case Threshing Mach. Co. (Tex. Civ. App.) 295 S. W. 281, and authorities cited therein; Lipsitz v. First Nat'l Bank (Tex. Civ. App.) 288 S. W. 609; Id. (Tex. Com. App.) 293 S. W. 563; T. B. Meeks Co. v. Hudgins (Tex. Civ. App.) 22 S.W.(2d) 764; Braun v. Sauerwein, 10 Wall. 218, 19 L. Ed. 895; 17 R. C. L. 827, 828, § 189; 37 C. J. 1045, § 455."

As what we have already said sufficiently disposes of appellants' propositions 2, 3, 5, and 6, the contentions made thereby are overruled without further comment.

■■ Appellants also contend, as a cause for a reversal of the judgment, that the evidence adduced on their amended motion for new trial shows that the jury discussed and considered, while deliberating on the amount of damages they would allow plaintiff, the doctors' bills she had incurred and would probably incur in the future on account of the injuries involved in this suit, and the fact that she would probably have to pay an attorney's fee out of whatever she recovered in the suit, and that the evidence also showed that this discussion affected the amount of their verdict, but that it could not be determined from the evidence the exact or approximate extent that this discussion affected the amount of the jury's verdict.

After a careful consideration of all facts shown relative to the alleged misconduct of the jury, together with the ruling of the court thereon, we have reached the conclusion that such misconduct does not require a reversal of the judgment. After the trial court had heard the testimony of several of the jurors, who tried the case, he substantially announced to counsel for the plaintiffs and defendants that he found from the evidence that there was misconduct by the jury in discussing the probable amount of doctor's bills Mrs. Isbell would have to pay and how much she would have to pay as attorney's fees, while deliberating as to what amount they should find for her because of her injury, but that such misconduct would be rendered harmless, or without injury to the defendants, if the plaintiffs would remit $12,000 of the total sum of $15,000 awarded to the plaintiffs by the verdict of the jury, and that, unless plaintiffs filed a remittitur of $12,000, the court would grant defendants' motion for new trial. After such remittitur was filed, the court overruled defendants' motion for new trial, and rendered judgment against defendants for the sum of $3,000 only.

The preponderance of the evidence shows that Mrs. Isbell suffered an injury as alleged and that such injury was caused by the negligent act of the driver of the cab of Webster and Dixie Cab Company, and the jury so found. In other words, that Mrs. Isbell suf-

fered the injury complained of by reason of the negligence of the driver of the cab was conclusively shown by the evidence, and practically the only real controversial issue was the amount to be awarded the plaintiffs as damages.

The trial court heard evidence as to the amount of the verdict tainted with misconduct of the jury, and found that a remittitur of $12,000 would cover any possible portion of the so tainted verdict. The findings of the trial judge are abundantly supported by the evidence, and his findings should not be disturbed, unless the evidence leaves it reasonably doubtful as to whether the amount remitted was sufficient to cover any amount added to the verdict by reason of the misconduct of the jury complained of. Certainly the misconduct could not be material after the large sum of $12,000 was remitted from the total sum of $15,000 awarded by the verdict of the jury. I. G. N. Ry. Co. v. Cooper, 1 S.W.(2d) 578 (by Tex. Com. of Appeals); Estep v. Bratton (Tex. Civ. App.) 24 S.W.(2d) 465.

For the reasons pointed out, the judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

 By motion for rehearing filed in this court in behalf of Bruce Webster and American Fidelity & Casualty Company of Richmond, Va., it is urged that this court erred in sustaining the action of the trial court in overruling the general demurrer of complainants here to the plaintiffs' petition. They insist that there is no allegation in the petition that the policy issued by the casualty company to Bruce Webster was issued for the benefit of the plaintiffs, or any of them, and that, in the absence of such allegation, the petition was subject to the general demurrer.

The plaintiffs in their petition did, in effect, allege the issuance of the policy to Bruce Webster by the insurer, the casualty company, and specifically charged that Viola S. Isbell is entitled to recover against the American Fidelity & Casualty Company to the extent of $2,500 by reason of its issuance of said policy.

The policy on its face, or some of its parts, shows that Bruce Webster had received a license from the city of Houston to operate the vehicle, which was instrumental in the injury of Mrs. Isbell, for hire, in full accordance with the ordinances and regulations governing vehicles; that the policy was issued for the use and benefit of any one claiming under it.

Under the circumstances stated, we think the allegations of the petition fully advised the insurer that plaintiffs were claiming that the policy was issued for the benefit of those injured by Bruce Webster in the operation of his licensed vehicle, of which class she was one. We think the clear intendment of the petition was to so allege, and, in the absence of a special exception addressed to the allegation referred to, it should stand and be considered a sufficient allegation to permit proof that Mrs. Isbell was a beneficiary under the policy.

It is only incumbent upon a plaintiff to allege sufficient facts to advise the defendant that the plaintiff is concerned with the cause of action averred. 49 C. J. at page 140.

Believing that plaintiffs' petition was good as against the general demurrer addressed to it, the motion of appellants for rehearing is overruled.

Overruled.